## UNITED STATES *v.* COLGATE & COMPANY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF VIRGINIA.

No. 828. Argued March 10, 1919.—Decided June 2, 1919.

On a writ of error under the Criminal Appeals Act, this court must confine itself to the question of the construction of the statute involved in the decision of the District Court, accepting that court's interpretation of the indictment. P. 301.

In the absence of any intent to create or maintain a monopoly, the
Sherman Act does not prevent a manufacturer engaged in a private
business from announcing in advance the prices at which his goods
may be resold and refusing to deal with wholesalers and retailers
who do not conform to such prices.  P. 307.

As the court interprets the District Court's opinion, the indictment
in this case was interpreted as not charging the defendant with
selling to dealers under agreements obligating them not to resell at
prices other than those fixed by defendant. . P. 306.  *Dr. Miles
. Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373, distinguished.

253 Fed. Rep. 522, affirmed.

The case is stated in the opinion.

*Mr. Assistant to the Attorney General Todd*, with whom
*Mr. Henry S. Mitchell*, Special Assistant to the Attorney
General, was on the brief, for the United States.

. *Mr. Charles E. Hughes*, with whom *Mr. Charles Wesley
Dunn* and *Mr. Mason Trowbridge* were on the brief, for
defendant in error.

. MR. JUSTICE MCREYNOLDS delivered the opinion of the
court.

Writs of error from District Courts directly here may be
taken by the United States "From a decision or judgment
quashing, .setting aside, or sustaining a demurrer to, any
indictment, or any count thereof, where such decision or
judgment is based upon the invalidity,   construction .
of the statute upon .which the indictment is founded."
(Act of March 2, 1907, c. 2564, 34 Stat. 1246.)  Upon such
a writ ."we have no authority to revise the mere interpre-
tation of an indictment and are confined to ascertaining
whether the court in a case under review erroneously con-
strued the statute."  "We must accept that court's inter-
pretation of the indictments and confine our review to the
question of the construction of the statute involved in its

decision." . *United States* v. *Carter*, 231 U. S. 492, 493; *United States* v. *Miller*, 223 U. S. 599, 602.

Being of opinion that "The indictment should set forth such a state of facts as to make it clear that a manufacturer, engaged in what was believed to be the lawful conduct of its business, has violated some known law, before it is haled into court to answer the charge of the commission of a crime" and holding that it "fails to charge any offense under the Sherman Act or any other law of the United States, that is to say, as to the substance of the indictment and the conduct and acts charged therein" the trial court sustained a demurrer to the one before us. Its reasoning and conclusions are set out in a written opinion. 253 Fed. Rep. 522.

We are confronted by an uncertain interpretation of an indictment itself couched in rather vague and general language. Counsel differ radically concerning the meaning of the opinion below and there is much room for the controversy between them.

The indictment runs only against Colgate & Company, a corporation engaged in manufacturing soap and toilet articles and selling them throughout the Union. It makes no reference to monopoly, and proceeds solely upon the theory of an unlawful combination. After setting out defendant's organization, place and character of business and general methods of selling and distributing products through wholesale and retail merchants, it alleges—

"During the aforesaid period of time, within the said eastern district of Virginia and throughout the United States, the defendant knowingly and unlawfully created and engaged in a combination with said wholesale and retail dealers, in the eastern district of Virginia and throughout the United States, for the purpose and with the effect of procuring adherence on the part of such dealers (in reselling such products sold to them as aforesaid) to resale prices fixed by the defendant, and of pre-

venting such dealers from reselling such products at lower prices, thus suppressing competition amongst such wholesale dealers, and amongst such retail dealers, in restraint of the aforesaid trade and commerce among the several States, in violation of the act entitled 'An Act to protect trade and commerce against unlawful restraints and monopolies,' approved July 2, 1890."

Following this is a summary of things done to carry out the purposes of the combination: Distribution among dealers of letters, telegrams, circulars and lists showing uniform prices to be charged; urging them to adhere to such prices and notices, stating that no sales would be made to those who did not; requests, often complied with, for information concerning dealers who had departed from specified prices; investigation and discovery of those not adhering thereto and placing their names upon "suspended lists"; requests to offending dealers for assurances and promises of future adherence to prices, which were often given; uniform refusals to sell to any who failed to give the same; sales to those who did; similar assurances and promises required of, and given by, other dealers followed by sales to them; unrestricted sales to dealers with established accounts who had observed specified prices, etc.

Immediately thereafter comes this paragraph:

"By reason of the foregoing, wholesale dealers in the aforesaid products of the defendant in the eastern district of Virginia and throughout the United States, with few exceptions, resold, at uniform prices fixed by the defendant, the aforesaid products, sold to them by the defendant, and refused to resell such products at lower prices to retail dealers in the States where the respective wholesale dealers did business and in other States. For the same reason retail dealers in the aforesaid products of the defendant in the eastern district of Virginia and throughout the United States resold, at uniform prices fixed by

the defendant, the aforesaid products, sold to them by the defendant and by the aforesaid wholesale dealers, and refused to sell such products at lower prices to the consuming public in the States where the respective retail dealers did business and in other States. Thus competition in the sale of such products, by wholesale dealers to retail dealers, and by retail dealers to the consuming public, was suppressed, and the prices of such products to the retail dealers and to the consuming public in the eastern district of Virginia and throughout the United States were maintained and enhanced."

In the course of its opinion the trial court said:

"No charge is made that any contract was entered into by and on the part of the defendant, and any of its retail customers, in restraint of interstate trade and commerce—the averment being, in effect, that it knowingly and unlawfully created and engaged in a combination with certain of its wholesale and retail customers, to procure adherence on their part, in the sale of its products sold to them, to resale prices fixed by the defendant, and that, in connection therewith, such wholesale and retail customers gave assurances and promises, which resulted in the enhancement and maintenance of such prices, and in the suppression of competition by wholesale dealers and retail dealers, and by the latter to the consuming public."

*     *     *     *     *     *     *     *     *.     *

"In the view taken by the court, the indictment here fairly presents the question of whether a manufacturer of products shipped in interstate trade, is subject to criminal prosecution under the Sherman Act, for entering into a combination in restraint of such trade and commerce, because he agrees with his wholesale and retail customers, upon prices claimed by them to be fair and reasonable, at which the same may be resold, and

declines to sell his products to those who will not thus stipulate as to prices. This, at the threshold, presents for the determination of the court how far one may control and dispose of his own property; that is to say, whether there is any limitation thereon, if he proceeds in respect thereto in a lawful and bona fide manner. That he may not do so fraudulently, collusively, and in unlawful combination with others, may be conceded. *Eastern States Lumber Association* v. *United States,* 234 U. S. 600, 614. But it by no means follows that, being a manufacturer of a given article, he may not, without incurring any criminal liability, refuse absolutely to sell the same at any price, or to sell at a named sum to a customer, with the understanding that such customer will resell only at an agreed price between them, and, should the customer not observe the understanding as to retail prices, exercise his undoubted right to decline further to deal with such person."

\* \* \* \* \* \* \* \* \* \*

"The pregnant fact should never be lost sight of that no averment is made of any contract or agreement having been entered into whereby the defendant, the manufacturer, and his customers, bound themselves to enhance and maintain prices, further than is involved in the circumstances that the manufacturer, the defendant here, refused to sell to persons who would not resell at indicated prices, and that certain retailers made purchases on this condition, whereas, inferentially, others declined so to do. No suggestion is made that the defendant, the manufacturer, attempted to reserve or retain any interest in the goods sold, or to restrain the vendee in his right to barter and sell the same without restriction. The retailer, after buying, could, if he chose, give away his purchase, or sell it at any price he saw fit, or not sell it at all; his course in these respects being affected only by

the fact that he might by his action incur the displeasure of the manufacturer, who .could refuse to make further sales to him, as he had the undoubted right to do. There is no charge that the retailers . themselves entered into any combination or agreement with each other, or that the defendant acted other than with his customers individually."

Our problem is to ascertain, as accurately as may be, what interpretation the trial court placed upon the indictment—not to interpret it ourselves; and then to determine whether, so construed, it fairly charges violation of the Sherman Act. Counsel for the Government maintain, in effect, that, as so interpreted, the indictment adequately charges an unlawful combination (within the doctrine of *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373) resulting from restrictive agreements between defendant and sundry dealers whereby the latter obligated themselves not to resell except at agreed prices; and to support this position they specifically rely upon the above-quoted sentence in the opinion which begins "In the view taken by the court," etc. On the other hand, defendant maintains that looking at the whole opinion it plainly construes the indictment as alleging only. recognition of the manufacturer's undoubted right to specify resale prices and refuse to deal with anyone who failed to maintain the same.

Considering all said in. the opinion (notwithstanding some serious doubts) we are unable to accept the construction placed upon it by the Government. We cannot, *e. g.*, wholly disregard the statement that "The retailer, after buying, could, if he chose, give away his purchase, or sell it at any price he saw fit, or not sell it at all; his course in these respects being affected only by the fact that he might by his action incur the displeasure of the manufacturer, who could refuse to make further sales to him, as he had the undoubted right to do." And we

must conclude that, as interpreted below, the indictment does not charge Colgate & Company with selling its products to dealers under agreements which obligated the latter not to resell except at prices fixed by the company.

The position of the defendant is more nearly in accord with the whole opinion and must be accepted. And as counsel for the Government were careful to state on the argument that this conclusion would require affirmation of the judgment below, an extended discussion of the principles involved is unnecessary.

The purpose of the Sherman Act is to prohibit monopolies, contracts and combinations which probably would unduly interfere with the free exercise of their rights by those engaged, or who wish to engage, in trade and commerce—in a word to preserve the right of freedom to trade. In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal. And, of course, he may announce in advance the circumstances under which he will refuse to sell. "The trader or manufacturer, on the other hand, carries on an entirely private business, and can sell to whom he pleases." *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290, 320. "A retail dealer has the unquestioned right to stop dealing with a wholesaler for reasons sufficient to himself, and may do so because he thinks such dealer is acting unfairly in trying to undermine his trade." *Eastern States Retail Lumber Dealers' Association* v. *United States,* 234 U. S. 600, 614. See also *Standard Oil Co.* v. *United States,* 221 U. S. 1, 56; *United States* v. *American Tobacco Co.,* 221 U. S. 106, 180; *Boston Store of Chicago* v. *American Graphophone Co.,* 246 U. S. 8. In *Dr. Miles Medical Co.* v. *Park & Sons Co., supra,* the unlawful

combination was effected through contracts which undertook to prevent dealers from freely exercising the right to sell.

The judgment of the District Court must be

*Affirmed.*