The **CAMPBELL DISTRIBUTING CO.,** a **Maryland corporation, Plaintiff,**

v.

**JOS. SCHLITZ BREWING COMPANY,** a **Wisconsin corporation, Defendant.**

**Civ. No. 12937.**

United States District Court
D. Maryland.
Aug. 31, 1962.

Joseph M. Wyatt, Robert F. Skutch, Jr., Weinberg & Green, Baltimore, Md., for plaintiff.

Bernard J. Flynn, Baltimore, Md., Francis H. Parson, Milwaukee, Wis., for defendant.

WINTER, District Judge.

Defendant has moved for summary judgment in its favor on plaintiff's three-count complaint. The first two counts are based upon §§ 2, 3, 14 and 15, Title 15 U.S.C.A., of the Federal antitrust laws, and the third count is an action for breach of contract under Maryland law.

FACTS:

Plaintiff is a Maryland corporation, engaged in the business of a wholesale distributor of beer in Annapolis, Anne Arundel County, Maryland, while defendant, a Wisconsin corporation, is engaged in the business of brewing beer and selling it in interstate commerce to distributors throughout the United States. Plaintiff had, for nearly twenty years, regularly and consistently purchased beer from defendant, pursuant to a contract (termed "Declaration of Terms"), which was amended in some particulars, not here pertinent, from time to time.

Plaintiff alleges that it devoted a great portion of its business efforts to promoting good will for defendant, and in the sale of defendant's beer in the Annapolis area, and that it expended large sums of money for advertising, delivery vehicles, inventory, storage space, training of employees, and similar purposes. Plaintiff alleges that sales of defendant's beer increased greatly over the twenty-year period, with substantial profit to defendant. In making these expenditures, plaintiff alleges that it relied "upon the express and implied assurances of Defendant and its agents, that Defendant would continue to supply beer to Plaintiff on Plaintiff's order."

Plaintiff further alleges that defendant's beer was the only "premium" type beer sold by plaintiff, because defendant expressly and impliedly told plaintiff that it would refuse to deal with plaintiff if plaintiff purchased and sold premium type beer brewed by any other brewer; and that plaintiff during the period was requested by other premium type brewers to purchase their beers for resale, but plaintiff declined to do so because of defendant's threats. Plaintiff says that it also purchased and sold a brand of non-premium beer, brewed by a brewer other than defendant, and that from time to time defendant remonstrated with plaintiff about its action in selling other than defendant's premium beer exclusively.

It is alleged that, without warning, reason, cause or notice, defendant terminated its course of dealing with plaintiff, and refused further to fill plaintiff's orders and that this sudden and continued refusal was motivated by plaintiff's refusal to deal exclusively in defendant's beer, and was in furtherance of defendant's unlawful policy, imposed upon plaintiff, of selling beer on the condition, agreement and understanding that the purchaser would not deal in the product of a competitor.

The charging portion of Count 1 recites that defendant's refusal to sell to plaintiff, being so motivated, " * * * had the effect of substantially lessening competition and tending to create a monopoly in the sale of beer in interstate commerce," and that the result of said refusal has been to cause great public injury and great injury to plaintiff. Count 2 charges that this refusal was " * * * for the purpose of creating or attempting to create a monopoly in the sale of beer in interstate commerce by forcing Plaintiff and others similarly situated to refuse to sell beer other than that brewed by Defendant so that competition in the sale of beer would be substantially lessened to the great injury of the public." The third count charges that defendant's refusal was in breach of defendant's express and implied agreement to continue to supply beer to plaintiff.

Suit was filed on April 3, 1961. While the complaint assiduously avoids disclos-

ing the date of defendant's alleged refusal to deal with plaintiff, defendant's president, Mr. Campbell, at his deposition, indicated that this refusal took place sometime after April, 1957, although he did not offer a specific date or dates. An affidavit filed on behalf of defendant establishes that plaintiff was told orally on March 19, 1957 that the Declaration of Terms between the parties was terminated and that, thereafter, by letter dated April 1, 1957, plaintiff was advised in writing that the theretofore existing arrangement between the parties was terminated, in accordance with paragraph 5 of the Declaration of Terms, which provided that "the relationship between the parties is exclusively that of Buyer and Seller, *and may be terminated by either party at any time, without cause* and without notice." (emphasis supplied) A letter, dated November 26, 1957, written by Mr. Campbell, and identified by him at his deposition, dealt with the settlement of the parties in reference to accounts outstanding and refers to the fact that the account dates back " * * * to March, of 1957," thereby corroborating to some extent defendant's version of the termination of the business relationship between the parties.

## GENERAL QUESTIONS:

Defendant asserts that the instant case is private antitrust litigation, and that 15 U.S.C.A. § 15b, which requires suits to be instituted within four years "after the cause of action accrued," applies. It is contended that, by virtue of 15 U.S.C.A. § 15b, the first two counts of the complaint are barred by limitations. It is contended, also, that they fail to state a claim upon which relief can be granted. Defendant asserts that the third count of the complaint is barred by the Maryland Statute of Limitations, Article 57, § 1, Annotated Code of Maryland (1957 Ed.), which requires actions for breach of contract, other than actions upon specialties, to be brought within three years.

## COUNT 3 CAUSE OF ACTION:

■ At the hearing on defendant's motion, plaintiff conceded that defendant was entitled at least to a partial summary judgment on the third count of the complaint, since, if the latest date of termination recalled by Mr. Campbell is accepted, clearly, the contractual relationship between the parties was terminated more than three years prior to the date that suit was brought. In a brief filed after the hearing, plaintiff apparently attempts to retract this concession by arguing that the Declaration of Terms recites that it is executed under seal and that, therefore, the twelve year Statute of Limitations found in Article 57, § 3 of the Annotated Code of Maryland (1957 Ed.) applies. The flaw in this argument is that if suit is grounded upon the Declaration of Terms, that agreement, by its terms, provides that it may be terminated by either party at any time without cause, so that there can be no cause of action under Maryland law for termination. If suit is not upon the Declaration of Terms, but is upon some other express or implied contract, the three year limitation does apply, unless the other express contract is also under seal. No such express contract is alleged or claimed to exist. The Court concludes, therefore, that defendant is entitled to summary judgment on the third count of the complaint.

## APPLICATION OF 15 U.S.C.A. § 3:

■ Plaintiff's general reference at the inception of the complaint that it relies upon 15 U.S.C.A. § 3 is not supported either by the undisputed facts or plaintiff's allegations. This section prohibits contracts, combinations in form of trust, or otherwise, or conspiracies in restraint of trade or commerce in any territory of the United States or of the District of Columbia, between any such territory and another, between any such territory and any state or states or the District of Columbia or foreign nations, or between the District of Columbia and any state or states or foreign na-

tions. From the pleadings and facts on the motion, it appears that plaintiff is a Maryland corporation, doing business in Annapolis, Anne Arundel County, Maryland, and defendant is a Wisconsin corporation, engaged in the business of brewing beer and selling it in interstate commerce, including at the time in question, to plaintiff. Thus, no trade or commerce of any territory or the District of Columbia seems to be affected, absent the allegation that plaintiff does business in any territory or the District of Columbia.

## COUNT 1 CAUSE OF ACTION:

The charging language of Count 1 clearly discloses that it is grounded upon § 3 of the Clayton Act, 15 U.S.C.A. § 14.

■ In the light of the settled state of the law, plaintiff's reliance upon 15 U.S.C.A. § 14 may likewise be summarily discussed. Aside from any question of limitations, § 14 makes unlawful, for any person engaged in commerce, to make a sale or contract for sale, *inter alia,* of goods, wares or commodities on the condition, agreement or understanding that the purchaser will not deal in the goods, wares or commodities of a competitor of the seller where the effect of such sale may be to substantially lessen competition or tend to create a monopoly in any line of commerce. For this section to be applicable, one of the elements present must be that there was a *contract* containing the prohibited restriction. Plaintiff's alleged cause of action is founded upon the theory that defendant *terminated* the contract theretofore existing between them and thereafter refused to sell to plaintiff, because plaintiff did not agree to such a restriction. It is not based upon the presence of such a restriction in an existing contract; hence, § 14 is inapplicable. Nelson Radio & Supply Co. v. Motorola, 200 F.2d

911, 915 (5 Cir. 1952), cert. den. 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); Allied Equipment Co. v. Weber Engineered Products, 237 F.2d 879, 883 (4 Cir. 1956); McElhenney Co. v. Western Auto Supply Company, 269 F.2d 332, 338 (4 Cir. 1959). See also Leo J. Meyberg Co. v. Eureka Williams, 215 F.2d 100 (9 Cir. 1954), cert. den. 348 U.S. 875, 75 S.Ct. 113, 99 L.Ed. 689 (1954).

Defendant is entitled to summary judgment as to plaintiff's first cause of action.

## COUNT 2 CAUSE OF ACTION:

Plaintiff's second count is grounded upon § 2 of the Sherman Act, 15 U.S.C.A. § 2.[1]

Defendant's first attack on plaintiff's Count 2 cause of action is based upon the four year limitations applicable to private antitrust litigation, 15 U.S.C.A. § 15b.

■ Again, the gravamen of plaintiff's asserted cause of action is the wrongful refusal to sell, i. e., the date of termination of the Declaration of Terms. By settled law, plaintiff's cause of action, if any, accrued on that date, Muskin Shoe Co. v. United Shoe Machinery Corp., 167 F.Supp. 106, 111 (D.C.Md.1958); Herman Schwabe v. United Shoe Machinery Corp., 23 F.R.D. 251, 253 (D.C.E.D.N.Y. 1959), aff'd. 274 F.2d 608 (2 Cir. 1960), cert. den. 363 U.S. 811, 80 S.Ct. 1247, 4 L.Ed.2d 1153 (1960); La Rouche v. United Shoe Machinery Corporation, 166 F.Supp. 633 (D.C.Mass.1958). On the facts before the Court on this motion, it cannot be established without genuine issue whether the date of termination was before April 3, 1957. Plaintiff's complaint is vague; the deposition of the president of plaintiff may or may not establish the date before April 3, 1957; defendant seeks to establish the date as March 19, 1957 (ostensibly controverted

1. 15 U.S.C.A. § 2:
   "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

by plaintiff, but perhaps corroborated); and defendant's affidavit attacking its letter of April 1, 1957 fails to disclose if the letter was mailed, if so, from where, and when the letter was received.[2] The extent to which this count is barred by limitations may be decided only after proof is taken.

More difficult of solution is the second attack which defendant directs against the second count. Defendant asserts that by a proper interpretation of the "attempt to monopolize" prohibition of § 2 of the Sherman Act, the refusal to sell, coupled with an intent to monopolize, is not prohibited unless the seller occupies a position of monopoly or occupies a sufficient segment of the market so that there is some reasonable probability that the illegal result may become an actuality.

To serve as a factual basis for its argument, defendant has filed an affidavit showing the total quantity, by gallons, of beer sold in the State of Maryland during the month of March, 1957 and the year 1957. Defendant sold 5.6% of this quantity in the year 1957 and 5.2% in the year 1961. Defendant also calls attention to the deposition of Mr. Campbell, president of plaintiff, who stated that his company sold about 500,000 to 600,000 cases of beer per year other than that brewed by defendant, and about 60,000 cases of beer brewed by defendant. Defendant argues that it lacks the power to control prices or to exclude competition.

Plaintiff has not alleged that defendant is a monopoly power. It has alleged only (Complaint, ¶ 2) that defendant is one of the largest brewers of beer in the United States. Plaintiff has, however, alleged (Complaint, ¶¶ 12 to 15) that defendant's refusal to sell to plaintiff was the result of plaintiff's refusal to handle defendant's premium beer exclusively, and that such refusal was for the purpose of attempting to create a monopoly. Plaintiff, in its argument and briefs, has

urged that a refusal to sell should be proscribed by the language of § 2 of the Sherman Act and, having alleged generally the size of defendant, plaintiff urges that defendant's intent in its refusal to deal with plaintiff is the crucial element constituting a violation of § 2, rather than defendant's present size or its ability to affect the market should an exclusive contract between the parties exist.

■ The law is clear that where a defendant occupies a monopoly position, or where the completion of the alleged illegal act will result in a defendant's occupying a monopoly position, a violation of the "attempt to monopolize" proscription of § 2 of the Sherman Act is established from a mere refusal to sell because of the purchaser's failure or refusal to accede to an exclusive dealing arrangement, Lorain Journal v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951). In such instances, specific intent to monopolize need not be proved since "no monopolist monopolizes unconscious of what he is doing," United States v. Griffith, 334 U.S. 100, 105–106, 68 S.Ct. 941, 92 L.Ed. 1236 (1948); United States v. Aluminum Co. of America, 148 F.2d 416, 432 (2 Cir. 1945).

■ As the language in those cases indicates, where a defendant is not a monopoly, or where the completion of the acts with which he is charged would not make him a monopoly, a refusal to sell for the reason that the vendee has failed or refused to accede to an exclusive dealing arrangement makes out a violation of § 2 of the Sherman Act only where there is specific intent to monopolize, coupled with the dangerous probability that a monopoly could be effectuated. This is so because § 2 of the Sherman Act directs itself against the "dangerous probability [of monopoly], as well as against the completed result," Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518 (1905); United States v.

---

2. In argument, the parties implied that the letter was mailed, but the fact of mailing was neither established nor stipulated. Certainly, no proof was offered as to the place of mailing. In the light

of the issue of fact as to notice of termination, the Court does not feel obliged to consider the legal question of whether the date of mailing or the date of receipt controls.

Griffith, supra. In short, to constitute a violation of § 2, there must be proof of monopoly or, in the absence of proof of monopoly, a specific intent to monopolize coupled with a dangerous probability of effectuating a monopoly. See also: Lorain Journal v. United States, supra, 342 U.S. p. 153, 72 S.Ct. 181, 96 L.Ed. 162; Mackey v. Sears, Roebuck & Co., 237 F.2d 869, 873 (7 Cir. 1956) cert. dismissed per stipulation, 355 U.S. 865, 78 S.Ct. 114, 2 L.Ed.2d 70 (1957).

If this case were one of first impression, plaintiff's argument that intent to monopolize, rather than defendant's size or ability to affect the market as a result of an exclusive dealing contract, is the crucial element might be somewhat persuasive. Such an argument could be based on the theory that the purpose of the Act is to keep open the channels of free competition, and to accomplish that purpose the beginnings of illegal conduct should be condemned as much as the illegal end result. Stated otherwise, a monopolist must begin somewhere; his illegal ultimate objective should be nipped in the bud. Indeed, support for this view may be found in the language, if taken literally, of Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 625, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919); United States v. Parker-Rust-Proof Co., 61 F.Supp. 805, 812 (D.C.E.D.Mich. 1945). See also: American Tobacco Co. v. United States, 328 U.S. 781, 789, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); Osborn v. Sinclair Refining Company, 171 F.Supp. 37 (D.C.Md.1959), rev'd. on other grds. & remanded, 286 F.2d 832 (4 Cir. 1961), on remand 207 F.Supp. 856 (D.C.Md., Decided July 3, 1962); American Football League v. National Football League, 205 F.Supp. 60 (D.C.Md.1962), appeal pending.

United States v. Griffith, supra, and United States v. Aluminum Co. of America, supra, hold that, where a defendant is not now a monopoly, an exclusive dealing contract falls within the prohibition of § 2 *only* where the plaintiff proves that defendant has a specific intent to monopolize coupled with a dangerous probability of effectuating a monopoly; and this statement finds other support binding on this Court. In McElhenney Co. v. Western Auto Supply Company 269 F.2d 332 (4 Cir. 1959), where the Court dealt with the sufficiency of a complaint, the requisites of an exclusive dealing arrangement in violation of § 2 of the Sherman Act are stated (p. 339):

> "This count of the complaint thus is bereft of any averment of monopoly power in any defined market, *or an intent to monopolize coupled with a dangerous possibility that a monopoly could be effectuated,* or the improper employment of the defendant's position to attain ends forbidden by law."

In an earlier case, Schwing Motor Company v. Hudson Sales Corporation, 138 F.Supp. 899 (D.C.Md.1956), aff'd. per curiam, 239 F.2d 176 (4 Cir. 1956), cert. den. 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957), the complaint was predicated upon the refusal of a manufacturer to renew two dealers' franchises, allegedly to give a third dealer a virtual monopoly of the sale of that particular make of automobile in Baltimore City, in violation of §§ 1 and 2 of the Sherman Act. Summary judgment for defendant was granted because it was not shown that the dealer had a monopoly or that its conduct showed an unreasonable restraint of interstate commerce.

There remains to be determined the quantum of proof needed to establish "a dangerous possibility that a monopoly [would] be effectuated," McElhenney Co. v. Western Auto Supply Company, supra. With regard to violations arising under § 2 of the Sherman Act, there is a surprising lack of authority on this point. From the adjudicated cases it is clear that an "attempt to monopolize" may take many forms. Where the alleged attempt, as here, is an exclusive dealing contract, and § 3 of the Clayton Act deals specifically with proscribed exclusive dealing contracts, it follows that the dangerous possibility here must be *at least* the

dangerous possibility of a violation of § 3 of the Clayton Act had the contract been put into effect.

The recent decision in Tampa Electric Co. v. Nashville Co., 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961) gives support to this view, because that case, involving the validity of an exclusive dealing contract, i. e., a twenty-year requirements contract to supply coal to a public utility generating electric energy, arose primarily under § 3 of the Clayton Act, although it was also alleged that the contract violated §§ 1 and 2 of the Sherman Act. The Court traced the construction placed upon § 3 of the Clayton Act over the course of adjudication and reiterated the ultimate test that exclusive dealing contracts which are proscribed by § 3 are those, the practical effect of which is to prevent a purchaser from using or dealing in goods of a competitor of the seller and thereby " 'competition has been foreclosed in a substantial share of the line of commerce affected.' " (p. 327, 81 S.Ct. p. 627). It was held that on all of the facts of the case that the contract did not violate § 3 of the Clayton Act. After reaching this result, the Court stated, with regard to the contention that the alleged illegal acts also constituted a violation of §§ 1 and 2 of the Sherman Act (p. 335, 81 S.Ct. p. 632):

> "We need not discuss the respondents' further contention that the contract also violates § 1 and § 2 of the Sherman Act, for if it does not fall within the broader proscription of § 3 of the Clayton Act it follows that it is not forbidden by those of the former."

While the Court did not elaborate on this statement, it would appear that in the case of exclusive dealing contracts, the Court was holding that § 2 of the Sherman Act cannot be violated if § 3 of the Clayton Act is not violated. It does not follow, however, that the converse is necessarily true. It may well be that § 3 of the Clayton Act might be violated without there being a violation of § 2 of the Sherman Act. In other words, the requirements of "attempt to monopolize" of § 2 of the Sherman Act may be more stringent than the "substantially lessen competition or tend to create a monopoly" requirement of § 3 of the Clayton Act, so that, if the other elements of any violation are also present, a greater lessening of effective competition must be shown to establish an infraction of § 2 of the Sherman Act than an infraction of § 3 of the Clayton Act. However, on this record, this is a question that need not now be decided.

A closer examination of Tampa Electric is indicated to determine if defendant has shown that it is entitled to summary judgment. The main thrust of the opinion was a restatement of the factors to be considered in deciding if a substantial volume of competition has been foreclosed, Handler, Some Unresolved Problems of Antitrust, 62 Col.L.Rev. 930, 949 (1962). Three basic factors were stated that should be considered: (1) the type of goods, wares or merchandise on the facts peculiar to the case, (2) the area of effective competition, and (3) the substantiality of the competition foreclosed by the contract, i. e., the opportunities for other traders to enter into or remain in the market. In elaboration of the third factor, the Court stated (p. 329, 81 S.Ct. p. 629):

> " * * * it is necessary to weigh the probable effect of the contract on the relevant area of effective competition, taking into account the relative strength of the parties, the proportionate volume of commerce involved in relation to the total volume of commerce in the relevant market area, and the probable immediate and future effects which pre-emption of that share of the market might have on effective competition therein. * * * "

Viewed in the light of the tests established by the Tampa Electric Co. case, the facts in the instant case, as disclosed by the affidavit and the deposition of Mr. Campbell, fail to establish beyond genuine issue that competition in a substantial share of the market has not been foreclosed, because these facts leave

unanswered (a) the area of effective competition, (b) the substantiality of effective competition foreclosed if plaintiff had acceded to defendant's exclusive dealing proposal, and (c) the facts, if any, in regard to the sale and distribution of premium beer peculiar to this case.

Summary judgment must, therefore, be denied. It will be denied, however, without prejudice to its renewal should defendant be able to support either of its theories in regard to the second count by additional affidavits, depositions or admissions of fact, and without prejudice to plaintiff's right to amend the second count of its complaint should it wish to amend in the light of the views expressed herein.

Counsel for defendant may prepare an appropriate order.