**DELTOWN FOODS, INCORPORATED, Dellwood Dairy Co., Inc., Samuel Adler, Inc. and Country Milk Co., Inc., Plaintiffs,**

v.

**TROPICANA PRODUCTS, INC., Citrus Bowl, Inc., Fruit Industries, Inc., Anthony T. Rossi and Santo Consiglio, Defendants.**

United States District Court
S. D. New York.
April 26, 1963.

888

Hays, Sklar & Herzberg, by Howard A. Heffron, New York City, for plaintiffs.

Greenwald, Kovner & Goldsmith, New York City, Ira Millstein, Harry Litwin, New York City, of counsel, for defendants.

BONSAL, District Judge.

Plaintiffs have brought an action under the Federal anti-trust laws, 15 U.S.C. § 1 et seq., seeking a permanent injunction and treble damages. Plaintiffs now move for a preliminary injunction, claiming that the alleged wrongful acts of the defendants are causing plaintiffs continuing and irreparable injury.

Plaintiffs are in the business of processing, packaging and distributing milk and milk products in metropolitan New York. Approximately ten years ago the plaintiffs began the distribution of Tropicana orange juice as an adjunct to their milk distributing business. Plaintiffs' attorney stated at the hearing that the distribution of orange juice constitutes approximately 8% of their business of some fifty million dollars a year. Tropicana orange juice is chilled, fresh orange juice processed and packaged by the defendant Tropicana Products, Inc. and distributed in the New York area by defendant Citrus Bowl, Inc. Defendants' attorney stated that both the defendant corporations have substantially the same shareholders.

In recent months the plaintiffs undertook the packaging and sale of their own chilled, fresh orange juice under the trade name "Dellwood". Upon learning of this, defendant Citrus Bowl, Inc. discontinued the sale of Tropicana orange juice to the plaintiffs, which led to the current action under the anti-trust laws.

Plaintiffs now move for a preliminary injunction seeking to compel defendants to continue to deal with plaintiffs.

The matter of a preliminary injunction having been set down for a hearing, plaintiffs called no witnesses but elected to proceed on the affidavits which had been filed with their motion. Defendants submitted opposing affidavits denying many of the material allegations of fact set forth in the plaintiffs' affidavits.

Plaintiffs and defendants agree that the most effective and efficient method of entry into the metropolitan New York area by a large processor and packager of chilled fresh orange juice such as the defendant Tropicana is the utilization of independent milk dealers as distributors. This is because the distribution of chilled fresh orange juice to numerous retail

food stores requires the use of the same refrigerated storage, handling and delivery facilities as are employed in distributing milk. The milk dealers, in addition to owning and operating the necessary facilities, have established customer relations and retail outlets. Consequently, it is difficult for an entrant into the chilled, fresh orange juice market to compete satisfactorily with the established brands unless the newcomer also utilizes milk dealers.

Plaintiffs contend that defendants, by refusing to continue to furnish Tropicana orange juice, have conspired to violate the anti-trust laws and to create a monopoly. On the other hand, the defendants assert that once the plaintiffs undertook the packaging and distributing of their own private brand of orange juice, defendants would be committing business suicide if they continued to sell plaintiffs Tropicana, to be distributed as second best. Defendants state that they have no objection to the plaintiffs or any other distributors selling competing brands of orange juice other than the distributors' own private brand, and, indeed, it is alleged that for a period of time plaintiffs sold Minute Maid as well as Tropicana. (Plaintiffs admit that they distributed Minute Maid fresh, chilled orange juice in limited quantities from March 1961 until December 1962 when Minute Maid withdrew their juice from the market.)

In an application for a preliminary injunction the Court must be satisfied: (1) that the plaintiffs have a reasonable chance of proving violations of the anti-trust laws at the trial, and (2) that plaintiffs will suffer irreparable damage in the interim period if the preliminary injunction is not granted.

Included among the disputed issues of fact are:

1. Plaintiffs contend that defendants have agreed that they will allow plaintiffs or other distributors to distribute Tropicana only on the condition that they do not also distribute a competing fresh orange juice. Defendants deny this and state that the only restriction is that the defendant Citrus Bowl, Inc. will not sell to a distributor which becomes a competitor itself by distributing its own private brand, as the plaintiffs have done in this case.

2. Plaintiffs contend that defendants exacted promises from themselves and other distributors not to distribute competing fresh orange juice. This the defendants categorically deny.

3. Plaintiffs state that defendants used threats and coercion against distributors and cancelled distributing arrangements with others when they distributed competing brands. This is also denied.

4. Plaintiffs contend that defendants enjoy 70–75% of the fresh chilled orange juice market in the New York metropolitan area. This is also denied, and plaintiffs have offered no proof. Defendant Tropicana claims that it is only one of fifteen primary processors of chilled fresh orange juice in Florida alone, many of which sell their juice under their own trademarks in the New York metropolitan area, and that some milk companies and supermarket chains sell chilled orange juice under their own private labels. Indeed, there has been no determination as to what constitutes the relevant market geographically, or the relevant market as to product.

5. Plaintiffs contend that defendants have been offering and selling Tropicana to distributors and directly to plaintiffs' customers at unreasonably low and discriminatory prices, which defendants also deny. Defendants allege that plaintiffs sell their Dellwood orange juice at five cents less than Tropicana, so that any price reduction made by defendants was required to meet this competition.

6. Plaintiffs contend that there has been an agreement and conspiracy in violation of the anti-trust laws between the defendant Tropicana and the defendant Citrus Bowl, Inc. Defendants deny this and claim that any decision to refuse to allow plaintiffs to distribute Tropicana juice was made solely by

Citrus Bowl, the corporation in charge of distribution.

7. Plaintiffs claim that because of defendants' refusal to allow them to distribute Tropicana juice, they have suffered a 48% loss of their orange juice sales within a very short period. Defendants contend that the figures show that plaintiffs have replaced 52% of their original sales of Tropicana with the sale of their own private brand juice and will increase this percentage as time goes on. Moreover, defendants assert that plaintiffs realize a greater profit on sales of their private brand than they did with Tropicana. At worst, according to defendants, plaintiffs have suffered a temporary loss of sales of a product which constitutes only 3% of plaintiffs' total business.

The essence of defendants' position is that all that is involved here is a refusal to deal, which was justified because of the damage plaintiffs could do to defendants' product by treating it as second best, while promoting their own private brand over Tropicana. Such refusal to deal, defendants say, is not unreasonable nor in violation of the antitrust laws, citing Dehydrating Process Co. v. A. O. Smith Corp., 292 F.2d 653, 657 (1st Cir.), cert. denied, 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 194 (1961), where Judge Aldrich stated: "As we have had occasion to observe before * * *, the antitrust laws do not require a business to cut its own throat."

Section 3 of the Clayton Act (15 U.S.C. § 14), which defendants claim is inapplicable, provides that it shall be unlawful for a person to make a sale or contract for the sale of goods "on the condition, agreement, or understanding" that the purchaser is not to use the goods of a competitor of the seller where the effect may be to lessen competition, or tend to create a monopoly. As defendants state that there is a refusal to deal involved here rather than a sale or contract of sale, and as the Court has no evidence of sales or contracts to sell on a prohibited condition, § 3 does not appear to be applicable on the present

record. Nor can the Court say that defendants may not justify their conduct at the trial since (1) plaintiffs concede that defendants continued to deal with them while they distributed a competing brand of orange juice, Minute Maid; and (2) it appears that defendants' termination of sales to plaintiffs occurred contemporaneously with the plaintiffs' marketing of their own Dellwood brand.

"There is nothing whatever in the Act to suggest that it covers a situation where the manufacturer refuses to make a sale or enter into a contract, and it has been stated time and again that a manufacturer has the unquestioned right to refuse to deal with anyone for reasons sufficient to himself. [citing cases] * * * There is a real difference between the act of refusing to deal and the execution of a contract which prevents a person from dealing with another." Nelson Radio & Supply Co. v. Motorola, 200 F.2d 911, 915–916 (5th Cir., 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).

See also, Campbell Distributing Co. v. Schlitz Brewing Co., 208 F.Supp. 523, 527 (D.Md.1962). It is true that the Supreme Court's decision in United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), relied on by plaintiffs substantially limited the "refusal to deal" doctrine, but the later Second Circuit opinion in House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867 (1962) shows that it still has vitality in this Circuit. See also, George W. Warner & Co. v. Black & Decker Mfg. Co., 277 F.2d 787 (2d Cir., 1960).

As the disputed issues of fact indicated above demonstrate, defendants' position is that it has not refused to sell to distributors who also handle a competitor's product, but that it will not deal with a distributor which sells its own private brand in competition with Tropicana. Even if this were construed to be a condition of a contract of sale, it is not readily apparent to the Court that such

a transaction would fall within the purview of § 3 because the condition would not be that the buyer not handle the goods of a competitor, but rather that the buyer not be a competitor.

Turning to plaintiffs' allegations of monopoly under § 2 of the Sherman Act (15 U.S.C. § 2), defendants contend that their "refusal to deal" is devoid of any monopolistic aspects. Defendants readily concede that the use of milk dealers such as the plaintiffs as distributors is the most effective entry into the chilled fresh orange juice business, but they deny that their position has given them a monopoly, or that their refusal to deal constituted an attempt to monopolize. Indeed, by refusing to deal with plaintiffs, it may be that defendants created an added market for its competitors. See, House of Materials v. Simplicity Pattern Co., supra 298 F.2d at 871. It appears that there are a number of defendants' competitors producing chilled orange juice. The relevant market, and defendants' share in it, have not been established. Defendants urge that the "market" includes the various forms in which orange juice is sold, and perhaps other fruit juices as well, each in a variety of forms, and that in this market, defendants' share is insignificant. In the government's suit against Du Pont under § 2 of the Sherman Act for alleged monopoly of cellophane, the court found, only after a full trial, that the relevant market comprised all flexible packaging materials and that competition from other materials in *that* market prevented Du Pont cellophane from having a monopoly. United States v. E. I. Du Pont De Nemours & Co., 351 U.S. 377, 76 S. Ct. 994, 100 L.Ed. 1264 (1956).

The Court cannot, at this early stage of the proceedings and with the limited facts before it, determine the relevant market or whether defendants enjoy a monopoly of such market, or whether the actions herein involved would tend to create a monopoly of such market.

■ If plaintiffs are to make out a violation by the defendants of § 1 of the Sherman Act (15 U.S.C. § 1), they must establish that the refusal to deal was the result of a contract, combination or conspiracy in restraint of trade or commerce, or that the refusal resulted in an unlawful agreement between the defendants and a customer. On this issue, the Court has only the plaintiffs' affidavits which are controverted by the defendants' statement that any refusal to deal was the sole and unilateral decision of the defendant Citrus Bowl, Inc. If such is the fact, and the Court makes no finding in this regard, there is no conspiracy. Nelson Radio & Supply Co. v. Motorola, supra 200 F.2d at 914. Moreover, the conflicting affidavits do not provide a basis for finding an illegal conspiracy between Citrus Bowl, Inc. and its distributors.

■ Therefore, the Court is not able to conclude on the present record that the plaintiffs have demonstrated clearly their right to ultimate relief, nor that they will be irreparably injured by the failure to grant injunctive relief.

As to injury, it is noted that defendants' refusal to sell plaintiffs Tropicana orange juice has not put the plaintiffs out of the chilled fresh orange juice business, nor is there any showing that their relations with their customers have or will be irreparably damaged. The plaintiffs have undertaken and appear to be successfully exploiting their Dellwood brand of orange juice in competition with Tropicana. Whether this is more profitable than distributing Tropicana is not clear, but it was brought out at the hearing that plaintiffs use the same machines for packaging Dellwood orange juice as they use for their milk, and that they can obtain as much bulk fresh orange juice as they need from suppliers in Florida.

■ In summary, on the limited record before it, the Court does not find present the requisite factors necessary for it to grant the extraordinary relief of a preliminary injunction. The Court should hesitate before granting a preliminary injunction which would require

"defendants to indefinitely entrust the marketing of their product in a wide area to a distributor with whom a relationship of confidence and cooperation has become impossible". Alpha Distributing Co. v. Jack Daniel's Distillery, 207 F.Supp. 136, 138 (N.D.Cal.1961), affirmed per curiam, 304 F.2d 451 (9th Cir., 1962); see also, George W. Warner & Co. v. Black & Decker Mfg. Co., 167 F.Supp. 860, 863–864 (E.D.N.Y.1958)

Plaintiffs' motion for a preliminary injunction is denied.

So Ordered.