**WEATHER WISE COMPANY, Plaintiff-Appellee,**

v.

**AEROQUIP CORPORATION, Defendant-Appellant.**

**No. 72–1348.**

United States Court of Appeals, Fifth Circuit.

Nov. 3, 1972.

Ross N. Sterling, Houston, Tex., Domke, Marcoux, Allen & Beaman, John H. Schomer, Jackson, Mich., Vinson, Elkins, Searls & Smith, Houston, Tex., for defendant-appellant.

Thomas R. Beech, Houston, Tex., for plaintiff-appellee.

Before DYER, SIMPSON and MORGAN, Circuit Judges.

DYER, Circuit Judge:

This is an appeal from a judgment of the district court entered upon a jury finding that Aeroquip Corporation had engaged in unreasonable restraints of trade in violation of section 1 of the Sherman Act. In the charge to the jury the court instructed, as a matter of law, that the requisite combination in restraint of trade did exist. We reverse.

To understand the alleged Sherman Act violation in this case, it is necessary to have a basic understanding of one segment of the air conditioning industry.[1] A complete air conditioning system consists of three parts: (1) a compressor or condensor; (2) an evaporating and air handling unit; and (3) a set of tubing that connects these two components, allowing the refrigerant to flow between them. Because an air conditioner must be a closed system and must contain only pure refrigerant, the components of the earliest systems were shipped to the point of installation without containing any coolant. There the parts were connected and, after an expensive and inefficient process, the system was charged with the coolant. The dissatisfaction with this procedure led to the development of components that could be charged at the factory and shipped ready for immediate installation and use. For the purposes of this case, the important aspect of this precharging process is the coupling device that allows the component to be charged and then connected to the other components without losing refrigerant or having the system become contaminated. Aeroquip

---

1. This appeal is not concerned with one-piece air conditioners, but only with larger systems which have the various parts located separately.

is a manufacturer of such a coupling device and controls a substantial portion of the market.

The present controversy concerns Aeroquip's sales policy which limits its sales of couplings only to those companies who manufacture complete air conditioning systems. These manufacturers are called Original Equipment Manufacturers (OEM's). The stated reason for this policy is that this maintains the integrity of air conditioning systems and thereby assures quality control.

The only recognized exception to this policy, or a second portion of it, is that Aeroquip will sell to a component manufacturer if an OEM states in writing that the manufacturer is making one part of the complete system for the OEM. Without obtaining these couplings, a component made by a non-OEM manufacturer could not be attached to and integrated with the total OEM system.

Weather Wise Company was a manufacturer of the air handling and tube set components found in a complete system, but, because it did not make compressors, it was not classified by Aeroquip as an OEM. Consequently, with no direct access to Aeroquip's couplings, Weather Wise either had to find an OEM which would state that Weather Wise was one of its suppliers, or it had to purchase from a direct customer of Aeroquip that had a surplus. Weather Wise was successful only with the latter approach and brought this action to recover treble the damages it suffered from the higher prices it paid for the couplings and from the sales lost as a result.

■ The determinative question on this appeal is whether the recited facts are sufficient to constitute a combination within the purview of the Sherman Act. The district court found, as a matter of law, that the writing of letters to Aeroquip by OEM's identifying the component manufacturers providing parts to the OEM's was sufficient co-operation with Aeroquip to constitute a combination under the Act. We disagree.

Because it was stipulated that Aeroquip's sales policy was established unilaterally, only the application of that policy could be questioned. Our examination of that application, however, shows that it is within the confines of United States v. Colgate & Co., 1919, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, as narrowed by United States v. Parke, Davis & Co., 1960, 362 U.S. 29, 8 S.Ct. 503, 4 L.Ed.2d 505, and Albrecht v. Herald Co., 1968, 390 U.S. 145, 88 S. Ct. 869, 19 L.Ed.2d 998. Aeroquip's activities, which included no attempt to control prices, were limited solely to its refusing to deal with manufacturers who did not qualify under its pre-existing sales policy. The writing of letters to Aeroquip by OEM's in no way aided Aeroquip's refusal to deal, but instead was the only way that Aeroquip would *extend* its list of direct customers. In short, Aeroquip's refusal to deal was unilateral, and any combination that existed furthered distribution without restraining trade.

■ Weather Wise also urges that statements by Aeroquip personnel that an OEM was not to resell or that an OEM would not be sold couplings for resale constituted an illegal refusal to deal. It is clear, however, that such statements, if made, were only the result of Aeroquip's restating and following its own unilateral sales policy.

■ Weather Wise's final assertion is that these statements amount to restrictions on the resale of the couplings in violation of United States v. Arnold, Schwinn & Co., 1967, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249. This argument also is not persuasive because Aeroquip's actions did not constitute resale restrictions, but were merely an attempt by Aeroquip to follow its own sales policy of not knowingly selling couplings for resale.

Because our finding that there was no Sherman Act combination disposes

of this appeal, we do not reach the questions of the propriety of using deposition summaries [2] or of the correctness of admitting certain documents as business records.

The judgment of the district court is reversed and judgment is rendered for Aeroquip Corporation.

Reversed and rendered.

2. We nevertheless take note that the use of deposition summaries in jury cases is, to say the least, highly unusual. The problem presented here is non-recurring, however, because the local rule under which these summaries were apparently authorized has been changed.