**VERMILION FOAM PRODUCTS COMPANY, an Ohio Corporation, et al., Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY, a New York Corporation, et al., Defendants.**

**Civ. A. No. 4-71324.**

United States District Court,
E. D. Michigan, S. D.

Nov. 30, 1974.

---

Leonard M. Moore, Dearborn, Mich., for plaintiffs.

Fred L. Woodworth, Detroit, Mich., for defendant General Electric.

John R. Hocking, Trenton, Mich., for defendant Myco Industries Co.

George R. Snider, Detroit, Mich., for Lochner and S. T. I. Corp., defendants.

David M. Gaskin, Detroit, Mich., for defendant B. A. S. F. Wyandotte.

## MEMORANDUM OPINION AND ORDER

KEITH, District Judge.

This is an action alleging violations of the federal antitrust statutes, violations of the federal trade regulations and unfair competition. The plaintiffs allege that jurisdiction is based upon 15 U.S.C. § 4, 15 U.S.C. § 15,[1] and 15 U.S.C. § 1121. The matter is now before this Court on the motions of the defendants to dismiss the amended complaint.

### I

The plaintiffs are Vermilion Foam Products, an Ohio Corporation, and several individuals who are shareholders, directors, officers and employees of the plaintiff corporation. The defendants are General Electric Corporation, a New York Corporation, B. A. S. F. Wyandotte, a Michigan Corporation, S. T. I. Corporation, an Ohio Corporation, Myco Industries, Inc., a Michigan Corporation and several individuals associated with the various corporate defendants.

In order to understand better the relationships among the parties, it is necessary to discuss briefly the nature of their business. Vermilion Foam Products is a defunct corporation which prior to the events described in the complaint was in the business of supplying expandable polystyrene parts to General Electric and several of its competitors in the home appliance industry.

General Electric is a large corporation which manufactures home appliance products. B. A. S. F. Wyandotte was a supplier of a petroleum based raw product to Vermilion which the latter used in manufacturing the expandable polystyrene parts. Myco Industries was a competitor of Vermilion's in the expandable polystyrene parts market. S. T. I. Corporation was the owner of the premises leased by Vermilion in Ohio where it manufactured the expandable polystyrene parts.

The Amended Complaint is a five count document which rambles over a series of related and unrelated events and alleges that their totality constitutes violations of the Sherman Act, the Federal Trade Commission Act, and The Lanham Trademark Act.

Count One of the Complaint alleges that General Electric Corporation and B. A. S. F. Wyandotte entered into an agreement with the intention of destroying the business, goodwill and property of the plaintiff. Specifically, as much as such can be gathered, the plaintiff alleges that B. A. S. F. Wyandotte and General Electric entered into a conspiracy whereby B. A. S. F. allocated bead, a raw material essential to the production of expandable polystyrene, and thereby forced Vermilion to purchase the bead from General Electric. G. E., in turn, would only sell to Vermilion bead to be used exclusively for producing parts for its corporation. The plaintiff alleges that this cut off the supply of parts to G. E.'s competitors, presumably with the effect of restraining competition and affecting interstate commerce.

In Count I, the plaintiffs also alleges that G. E. is violating section 2 of the Sherman Act. They allege that G. E. possesses monopoly power in the home appliance market, and supposedly that their acts in restricting the use of bead sold to Vermilion constituted an attempt to monopolize illegally the home appliance market.

---

1. The plaintiffs alleged that the defendant, through acts alleged in the Amended Complaint, had violated the Federal Trade Commission Act. After the defendants had raised objection to the propriety of a private suit under this Act, the plaintiffs conceded that they were not authorized to prosecute such a claim and stipulated with the defendants at the oral hearing to dismiss the FTC Act as a basis for federal jurisdiction.

Count II alleges the same facts as Count I, but the individual plaintiffs seek to recover, derivatively, losses they will suffer as guarantors and sureties of certain of Vermilion's debts.

Count III alleges a violation of § 1 of the Sherman Act by G. E.' and Myco Industries, one of Vermilion's competitors. The alleged purpose of the conspiracy in this Count was to allow the defendant to "benefit materially by the purchase of stock in Plaintiff Corporation at a distressed price." The plaintiffs allege that G. E. and MYCO used their control over the plaintiff's supply of bead, which had become critically low because of the Israeli War, "to paralyze and shut down plaintiff's . . operations at Sandusky, Ohio."

In the nature of specific allegations, the plaintiffs assert that G. E. transferred its tools, dies, molds and other essential processes from Vermilion to MYCO and that it promised also to transfer its purchase contracts to MYCO should that company not succeed in its attempt to acquire the controlling stock in the plaintiff corporation.

The plaintiff then describes a series of events involving individuals and corporations which are not named as defendants. These events entail attempts by these persons to acquire control of Vermilion through purchases of its stock. The defendant G. E. is alleged to have *intended* to use its position as a buyer of expandable polystyrene parts to demand price concessions from whichever of Vermilion's four competitors succeed in acquiring control of the plaintiff corporation. It is alleged further that an officer of G. E. orchestrated the attempt by the four competitors to acquire Vermilion's stock. Finally, the plaintiffs allege that as a result of these actions the Small Business Administration foreclosed its loans to the plaintiff corporation.

Count IV alleges unfair competition by General Electric. Count V alleges unfair competition by S. T. I. Corporation and the individual defendant Stephen C. Lochner.

The defendants challenge Counts I and III on the ground that they fail to state a claim under the Sherman Act. Count II is challenged on the ground that the individual plaintiffs lack standing to sue. Counts IV and V, which are brought under the Lanham Trademark Act, are challenged on the ground that that Act does not create an independent federal cause of action for unfair competition which is unrelated to a registered trademark.

For the reasons stated herein, the Court grants the defendants' motions to dismiss in all respects.

II

The backdrop for this action is the October 7, 1973 Arab-Israeli War. The plaintiffs, in paragraph 2 of Count I of the Amended Complaint, admit this, and recognize this fact as one of the reasons for subsequent allocations by American businesses of petroleum based products. This fact, therefore, must be borne in mind in dealing with the allegations made in the complaint.

■■■ In determining whether a cause of action has been stated, the complaint will be liberally construed. Mere conclusions of the pleader, however, without facts pleaded which tend to support these conclusions are not accepted as true. Sexton v. Barry, 233 F.2d 220, 223 (6th Cir. 1956)*. The plaintiffs in Count I and III allege that the defendants engage in a conspiracy in restraint of trade in violation of Section 1 of the Sherman Act. It is accepted by courts that " . . . in pleading a conspiracy in an action such as this, a general allegation of conspiracy without a statement of the facts constituting the conspiracy, its object and accomplishment, is but an allegation of a legal conclusion which is insufficient to constitute a cause of action." Crummer Co. v. DuPont, 223 F.2d 238, 245 (5th Cir. 1955) cert. denied 350 U.S.

---

* Cert. denied, 350 U.S. 838, 76 S.Ct. 75, 100 L.Ed. 747 (1955).

848, 76 S.Ct. 85, 100 L.Ed. 755 (1955) [Footnote omitted]. In accord, Scranton Construction Company, Inc. v. Litton Industries Leasing Corporation, 494 F.2d 778, 782 (5th Cir. 1974). In *Scranton,* the Court after finding the complaint insufficient said:

> "The Sherman Act is neither a lowest-responsible-bidder statute nor a panacea for all business affronts which seem to fit nowhere else." 494 F.2d, at 783 [Citations omitted].

A search of the Amended Complaint fails to uncover facts sufficient to state a cause of action under the Sherman Act, even though the Court accepts the facts that are pleaded as true.

█ The District Court in United States v. North Coast Transportation Co., 7 F.R.D. 491 (W.D.Wash.1947) stated what this Court believes to be the minimal prerequisite for stating a cause of action under the Sherman Act:

> "There must be an agreement of some character before there can be a conspiracy. This agreement need not be in writing . . . but there must be . . . circumstances which would justify the court in reaching the conclusion that a combination had been formed. There must be alleged certain acts of each of the alleged conspirators which would connect him or it with the conspiracy, and after the conspiracy has once been shown to exist, the overt act of anyone of the alleged conspirators would be binding upon all. Each of the defendants, therefore, has a right to know what he or it is alleged to have done which made him or it a part of the conspiracy and these acts should be alleged with sufficient definiteness . . . ." 7 F.R.D., at 493.

The Amended Complaint in this case alleges in paragraph 14 of Count I that a conspiracy existed among the various defendants. In paragraph 19, the allegation of conspiracy is again made, this time alleging in addition that as a result of the conspiracy the plaintiff corporation "lost all right to purchase in the free and open market from B. A. S. F. Wyandotte Corp., and was forced to acquire (certain) . . . critical supplies of bead from General Electric Corporation." In paragraph 18, however, the plaintiff alleges that as a result of the October 7, 1973 Arab-Israeli War and the resultant oil shortage, B. A. S. F. Wyandotte "took bead, an oil drivative product essential to plaintiff's operation, out of the free and competitive market by placing such bead on allocation and increasing its price considerably." This is the total of the factual allegations made by the plaintiffs in Count I to support their claim of an unlawful conspiracy under Section 1 of the Sherman Act.

█ The Court has no choice, therefore, but to dismiss this Count, particularly in view of the fact that the complaint has been amended once already. Heart Disease Research Foundation v. General Motors Corp., 463 F.2d 98, 100 (2d Cir. 1972); Arzee Supply Corp. of Conn. v. Ruberoid Co., 222 F.Supp. 237, 243 (D.Conn.1963). The allegations described above neither show a conspiracy nor can one reasonably be inferred therefrom. As the Court said in Weiner v. Bank of King of Prussia, 358 F.Supp. 684 (D.Pa.1973):

> "Although all well-pleaded material averments of the Complaint are admitted on a motion to dismiss, unsupported conclusions of fact . . . are not admitted." 358 F.Supp. at 693.

The Court concluded:

> "The plaintiff's amended complaint herein simply contains a general allegation of conspiracy without any statement of facts to support this legal conclusion. This is a fatal defect which requires dismissal of the conspiracy allegation and which underscores the invalidity and specious nature of plaintiff's argument that the amended complaint adequately alleges

a violation of the antitrust laws." 358 F.Supp., at 702.

For the same reasons, Count III of the Amended Complaint should be dismissed. The allegations in that Count either concern a mere refusal to deal, which does not constitute a violation of the Sherman Act [2] or concern actions which General Electric *intended* to take. As the Court said in National Research Bureau, Inc. v. Bartholomew, 331 F. Supp. 1003 (W.D.Pa.1971):

> "There are conclusory statements with regard to the (defendants') intentions, but there is a dearth of any factual allegations which even inferentially would support conclusions that (the defendants have) conspired or that (they are) attempting to monopolize." [3] 331 F.Supp. 1005.

### III

The defendants have moved to dismiss Count II on the ground that any injuries to the individual plaintiffs are derivative and that therefore they have no standing. Since the Court has decided that the amended complaint does not state a cause of action under the Sherman Act, whether the individual plaintiffs have standing is moot. Nevertheless, the Court is of the opinion that even if a cause of action had been stated by the corporate plaintiff, the individual plaintiffs would not have had standing under the Clayton Act, 15 U.S. C. § 15. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3rd Cir. 1970); Ash v. IBM, 353 F.2d 491 (3rd Cir. 1965) cert. denied, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966).

### IV

The remaining allegations, and the defendants' motions to dismiss the counts in which they appear, raise purely a question of law. Count IV alleges unfair competition by General Electric and Count V alleges unfair competition by S. T. I. Corporation and by Stephen Lochner. Both of these counts allege federal jurisdiction under the Lanham Trademark Act. 15 U.S.C. § 1121. Neither count alleges the involvement of any trademark. The sole issue, therefore, is whether the Lanham Act creates an independent federal unfair competition cause of action without a related claim for infringement of trademarks. This Court is of the opinion that it does not.

The plaintiffs rely solely on an interpretation of the Lanham Act by the Ninth Circuit. Stauffer v. Exley, 184 F.2d 962 (9th Cir. 1950). This doctrine has been criticized in at least one law journal, and has not been followed by any other circuit. See Automobile Association, Inc. v. Spiegel, 205 F.2d 771 (2nd Cir. 1953), cert. den., 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391 (1953); L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649, 652–654 (3rd Cir. 1954); Royal Lace Paperworks, Inc. v. Pest-Guard Products, Inc., 240

---

2. It has been repeatedly held that the mere refusal to deal, without more, does not constitute a violation of the Sherman Act. United States v. Parke, Davis & Co., 362 U.S. 29, 45–46, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); United States v. Colgate, 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919); Weather Wise Company v. Aeroquip Corp., 468 F.2d 716, 718 (5th Cir. 1972); Deltown Foods, Inc. v. Tropicana Products, Inc., 219 F.Supp. 887, 891 (S.D.N.Y.1963).

In Deltown the Court said:

"If plaintiffs are to make out a violation by the defendants of § 1 of the Sherman Act (15 U.S.C. § 1), they must establish that the refusal to deal was the result of a contract, combination or conspiracy in restraint of trade or commerce, or that the refusal resulted in an unlawful agreement between th defendant and a customer." 219 F.Supp., at 891.

3. The only allegations involving violations of Section 2 of the Sherman Act are directed at General Electric in paragraphs 16 and 17 of the Amended Complaint. They are mere conclusions, and therefore, also, insufficient.

F.2d 814, 816–820 (5th Cir. 1957);
City Messenger of Hollywood, Inc., v.
City Bonded Messenger Service, Inc., 254
F.2d 531, 534 (7th Cir. 1958), cert.
den., 358 U.S. 827, 79 S.Ct. 45, 3 L.Ed.2d
66 (1958); 7-Up Company v. Blue Note,
Inc., 260 F.2d 584, 585 (7th Cir. 1958),
cert. den., 359 U.S. 966, 79 S.Ct. 878, 3
L.Ed.2d 835 (1959); Iowa Farmers Un-
ion v. Farmers' Educational and Coop-
erative Union of America, 247 F.2d 809,
819 (8th Cir. 1957). The Court feels
that the weight of authority is against
the position asserted by the plaintiffs.
Although the Sixth Circuit has not dealt
directly with this issue, it has indicated
its belief that the Act is designed to deal
only with unfair competition which is as-
sociated with a related infringement of
trademark claim. Federal-Mogul-Bow-
er-Bearings, Inc., v. Azoff, 313 F.2d
405 (6th Cir. 1963).

For reasons stated above, therefore,
it is ordered that the plaintiffs' Amend-
ed Complaint be, and hereby is, dis-
missed.