418 F.2d 137
 TAMARON DISTRIBUTING CORPORATION, Steel City Department
Stores, Bargaintown U.S.A., Children's Bargaintown
U.S.A. and Dixie Juvenile Stores,
Plaintiffs-Appellants,
v.
Sam WEINER, Defendant-Appellee.
 No. 17487.
 United States Court of Appeals Seventh Circuit.
 Nov. 7, 1969.
 
 Ralph A. Mantynband, Joel S. Siegel, and Malcolm S. Kamin, Chicago, Ill., for plaintiffs-appellants; Arvey, Hodes & Mantynband, Chicago, Ill., of counsel.
 Donald A. Mackay, David P. List and Henry L. Mason, Chicago, Ill., for defendant-appellee; Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., of counsel.
 Before KNOCH, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit judges.
 KERNER, Circuit Judge.
 
 
 1
 Plaintiffs-appellants Filed suit under the Sherman Act, 15 U.S.C. 1 and 2, the Clayton Act, 15 U.S.C. 15, and the Robinson-Patman Act, 15 U.S.C. 13a, against Fred Bronner & Co., and Sam Weiner, defendant-appellee. The district court granted summary judgment for defendant-appellee Weiner and from this judgment plaintiffs appeal.
 
 
 2
 Plaintiffs-appellants are interlocking corporations, owned and operated by one family. Plaintiff, Tamaron Distributing Corporation, purchases toys and other merchandise at wholesale prices and distributes them to the other plaintiffs who own and operate retail stores in the Chicago, Illinois, area.
 
 
 3
 Fred Bronner & Co. (Bronner) is the exclusive distributor in the United States for Matchbox toys manufactured in London, England. As the exclusive distributor Bronner makes all the decisions as to pricing policy. Bronner instituted a program of retail price maintenance for its Matchbox toys and as a result refused delivery to anyone who would not agree to sell the toys at a price not lower than 20% Off the list price.
 
 
 4
 Sam Weiner, the defenant-appellee, is a manufacturers' representative with offices in Chicago, Illinois. As a manufacturers' Representative, he sells Bronner's and other toy companies' merchandise to wholesalers, jobbers and large retailers in Illinois, Indiana and Wisconsin. Weiner and his employees work on a commission basis. He does not determine price policy but rather solicits customers and transmits their orders. In selling Matchbox toys, Weiner entered into negotiations with the wholesalers, jobbers and retailers in order to insure Bronner's price maintenance. When all of a wholesaler's customers were not abiding by the minimum price level, Weinter would threaten to terminate all sales to the wholesaler unless he would bring his customers into line. Further, there is evidence that at least one of the large retailers complained to Weiner about other retailers advertising Matchbox toys at prices below the minimum level and inquired of Weiner as to what action was going to be taken.
 
 
 5
 Plaintiffs were large customers of Weiner for all types of toys. They sold matchbox toys but refused to agree to sell them at the minimum price. Weiner tried to convince plaintiffs not to violate the price level set by Bronner and threatened to stop delivery, but plaintiffs continued to sell below the minimum level. Weiner communicated this to Bronner whose officers also contacted the plaintiffs and threatened them with termination. When these negotiations failed, Weiner and Bronner stopped shipping Matchbox toys to the plaintiffs and plaintiffs commenced this law suit.
 
 
 6
 Section 1 of the Sherman Act provides that 'Every contract, combination * * * or conspiracy, in restraint of trade or commerce among the several States * * * is declared to be illegal.' The district court, relying on Nelson Radio & Supply Co. v. Motorola, 200 F.2d 911 (5th Cir. 1952), held that since Weiner was the agent of Bronner, a conspiracy between Weiner and Bronner to fix the minimum price level of Matchbox toys could not exist and granted defendant's motion for summary judgment. We disagree.
 
 
 7
 In Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1969), the Supreme Court, relying on United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), held that a combination between a newspaper and two third parties hired by the newspaper to perform simple services which the newspaper could easily have prformed itself was violative of the Sherman Act. The plaintiff in Albrecht owned and operated a newspaper route. The newspaper advertised rates for home delivery and said that it would cancel any routeman who charged more than the agreed price. Plaintiff charged a higher price and the newspaper notified its customers that it would undertake home delivery on its own. Later the newspaper hired another company, Milne Circulation Sales, Inc. (Milne), to solicit business in the area. The newspaper also advertised for a new routeman and employed Kroner to take the route on condition that he would abide by the price of the newspaper and that if plaintiff would cease from his pricing practices, Kroner would lose the new route. Albrecht was forced to reduce his price and brought suit under the antitrust laws. The Newspaper then terminated Albrech's route. Although there was an agreement between the newspaper, Milne and Kroner, it would seem that Milne and Kroner were merely the agents of the newspaper and thus under Nelson there could be no combination or conspiracy. The Court, however, held that a combination existed between the newspaper, Milne and Kroner to force Albrecht to lower his price to the agreed level.
 
 
 8
 The activities of Milne and Kroner upon which the Supreme Court rested its conclusion as to their independent status are similar to those of Weiner. The newspaper hired Milne to solicit customers away from Albrecht. Milne telephoned Albrecht's customers and told them that they could receive home delivery of the newspaper for less money. Milne did not deliver the newspapers but transmitted orders to the Herald Co. which undertook delivery. The Court found that although Milne sought to maximize its fee, it knew its main purpose was to force plaintiff to lower his price. Kroner, who was hired to compete directly with Albrecht and force Albrecht to lower his price, solicited new accounts and also delivered the papers. While Weiner, just as Milne, solicited customers for Bronner and transmitted their orders, he also acted to insure that his customers would maintain the minimum price level and refused to transmit orders without assurances from the purchasers that they would maintain that level. Milne and Kroner had no more independence than Weiner. Certainly, Weiner's activities 'materially aided in the accomplishment of respondent's plan.' Albrecht v. Herald Co., 390 U.S. 145, 150, 88 S.Ct. 869, 872, 19 L.Ed.2d 998 (1968).[1]
 
 
 9
 More light on the meaning of 'combination' as expounded in Albrecht was shed in Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).[2] In Perma Life, plaintiffs alleged a conspiracy between a parent and a wholly owned subsidiary. While it was alleged that the parent and the subsidiary held themselves out as competitors, see Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951), there was no substantial evidence of this. The Court, speaking through Justice Black, made no reference to eompetition bewteen the parent and subsidiary and concluded:
 
 
 10
 But since respondents Midas and International availed themselves of the privilege of doing business through separate corporations, the fact of common ownership could not save them from any of the obligations that the law imposes on separate entities. 392 U.S. at 141-142, 88 S.Ct., at 1986.
 
 
 11
 Similarly here, Bronner chose not to employ one of its own men to solicit business in Illinois, Indiana and Wisconsin, but, instead, hired Weiner. Under Perma Life, since Bronnr and Weiner are separate legal entities, their agreement to violate the antitrust laws would be illegal.
 
 
 12
 Consequently, we find that the district court's reliance upon Nelson Radio & Supply Co. v. Motorola, 200 F.2d 911 (5th Cir. 1952), was erroneous. That decision does not preclude a conspiracy or combination between a corporation and any agent. The guilding principle is the requirement that there be more than one independent business entity involved in the combination or conspiracy. Thus in Nelson Radio, the court properly held that the corporation could not conspire with its managing officers and agents who maintained no business identity separate from the corporation itself. On the other hand, where there are distinct entities, the existence of an 'agenct' relationship between them does not foreclose a violation of Section 1 of the Act. Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998(1968); United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); see also Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); Joseph E. Seagram and Sons, Inc. v. Hawaiian Oke and Liquors, Ltd., 416 F.2d 71 (9th Cir. Sept. 8, 1969). We conclude that a combination under the Sherman Act existed between Bronner and Weiner, and that the district court should not have granted summary judgment for Weiner.
 
 
 13
 Further, the district court improperly characterized Weiner's negotiations with wholesalers and retailers to enforce the price level as unilateral. The Court in United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), severely limited the holding of the Court in United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), by concluding that any 'affirmative action to achieve uniform adherence * * *' 362 U.S. at 47, 80 S.Ct. at 513, on the part of retailers constituted a violation of the Sherman Act. The Court in Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), relying on Parke Davis, concluded that acquiescence of the retailer by coercion constitutes a violation of the Act, 390 U.S. at 149, 88 S.Ct. 869, and further that acquiescence by other retailers in price maintenance to the exclusion of the petitioner would be violative of the Act. 390 U.S. at 150 n. 6, 88 S.Ct. 869. Here, plaintiffs in their complaint allege that Weiner combined with other retailers to enforce the minimum price level of Bronner and that the other retailers sought to have Weiner terminate anyone who did not comply. There is sufficient evidence both in the form of depositions and documents to create a fact question for the jury as to whether or not the acts of weiner visa-vis the wholesalers and retailers were unilateral and the granting of summary judgment on this issue was improper. See Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).
 
 
 14
 Reversed and remanded.
 
 
 15
 KNOCH, Senior Circuit Judge (concurring).
 
 
 16
 The Albrecht case, cited above, leaves me no option but to concur in the majority opinion. Nevertheless I cannot help but entertain misgivings as to the soundness of that decision. As Mr. Justice Harlan noted in his dissent to Albrecht, the object of the Sherman Act was to avoid combinations of power. The target of this legislation was the imposition of prices and territories by two (or more) separate entities in combination through the generation of market power which neither acting alone could exercise. Bronner acting through a manufacturer's representative generates no more market power than Bronner acting through its own hired employees.
 
 
 
 [1]
 For further discussion of Albrecht, see The Supreme Court, 1967 Term, 82 Harv. L.Rev. 63, 254-60 (1968)
 
 
 [2]
 For a discussion ofAlbrecht and Perma Life, see Handler, Through The Antitrust Looking Glass-- Twenty-First Annual Antitrust Review, 57 Cal.L.Rev. 182 (1969)