# 548

## CHICAGO FLEXIBLE SHAFT CO. v. KATZ DRUG CO.

### No. 5468.

Circuit Court of Appeals, Third Circuit.
July 31, 1934.

Hugh M. Morris, of Wilmington, Del. (John M. Zane and Harold W. Norman, both of Chicago, Ill., of counsel), for appellant.

Robert H. Richards, of Wilmington, Del., and Arthur Mag and Paul R. Stinson, both of Kansas City, Mo. (Ryland, Stinson, Mag & Thomson, of Kansas City, Mo., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the plaintiff brought suit against defendant charging it with unfair competition, and praying, inter alia, that "a preliminary injunction may be granted and may be issued out and under the seal of this Court enjoining the Katz Drug Company, its agents, its servants, officers or employees and each of them from advertising for sale or offering for sale or representing for sale or selling Mixmasters below the regular retail selling price of such Mixmasters in the sum of $21." After hearing, the court refused to grant such injunction, whereupon plaintiff took this appeal. After due consideration, we are of opinion such refusal was within the discretion of the court, and we therefore dismiss the plaintiff's appeal. But, while we agree with the conclusion of the court, we do not agree with the court's reason therefor, viz.: "Plaintiff's bill of complaint and the unchallenged facts in this record disclose" (on its own part) "a systematic infraction of the policy of the law against restraints of trade and of free competition."

From the proofs it appears the plaintiff was a large manufacturer of a kitchen utensil called "Mixmaster." In handling its product and reaching the ultimate user, the plaintiff's trade policy and practice was this: Plaintiff sold to such jobbers as it selected, but so long only as the jobbers adhered to plaintiff's plan, Mixmasters for $10.50 each. The jobbers sold to such retailers as they selected, and, so long only as such retailers adhered to plaintiff's plan, Mixmasters for $12.60 each. The retailers sold Mixmasters to customers for $21 each. If a retailer sold at less than $21, he was dropped; and, if a jobber sold to a retailer who did not live up to the plan, the jobber was dropped. It will thus be seen there was no contract, or an equivalent of a contract, between maker, jobber, and retailer to maintain prices. Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502; Federal Trade Comm. v. Beech Nut Packing Co., 257 U. S. 441, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882. The jobber bought the Mixmasters; the title was in him, as it was later in the retailer, and, as purchasers, each had a lawful right to sell to whom he pleased, and at any price. But, by refusing to adhere to the plaintiff's trade policy, and selling at lower prices, he put himself in a position where the plaintiff was no longer willing to employ him in marketing its product. In substance, what the plaintiff did was to outline a plan to market its product at fixed prices through agents of its own selection. It was selling its own "Mixmasters." It was not suppressing competition; it was not restraining commerce. This view of the situation is, in our judgment, in accord with the decisions. See U. S. v. Colgate & Co., 250 U. S. 300, 39 S. Ct. 465, 63 L. Ed. 992, 7 A. L. R. 443.

Turning to the defendant, a cut-rate dealer, it is evident it must have bought the "Mixmasters" it sold from some of the plaintiff's unfaithful jobbers or retailers. Whatever we think of the ethics of such disloyal agents and of the cut-rate defendant in buying from them, it is clear that, as such jobbers and retailers had bought and paid for the "Mixmasters," the defendant had a legal right to buy them and to sell them at such price as it chose. Although, in advertising them for sale, the defendant indulged in expressions which did

not always adhere to the truth, we cannot find that they imputed approval by, or connivance with, the plaintiff. Finding no error in the court's refusal to grant a preliminary injunction, the plaintiff's appeal is dismissed.