In re AA ALL STAR ENTERPRISES, INC., Debtor.

AA ALL STAR ENTERPRISES, INC., Plaintiff,

v.

AMERITECH PUBLISHING, INC., Defendant.

Bankruptcy No. 94–3136.
Related No. 94–31962.

United States Bankruptcy Court, N.D. Ohio, Western Division.

Sept. 7, 1994.

David F. Cooper, Toledo, OH.

L. Mari Taoka, Toledo, OH.

Russell R. Miller, Toledo, OH.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Plaintiff's Verified Complaint For Temporary And Permanent Mandatory Injunction, Motion For Preliminary (Affirmative) Injunction, Motion For Emergency Hearing, Supplemental Brief In Support of Plaintiff's Motion For Preliminary Injunction, and Reply Brief, and Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, Supplemental Memorandum, and Second Supplemental Memorandum. At the Hearing, the parties were afforded the opportunity to present evidence and arguments they wished the Court to consider in reaching its decision. This Court has reviewed the arguments of counsel, exhibits presented as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Preliminary Injunction should be Denied.

### FACTS

Plaintiff/Debtor AA All Star Enterprises, Inc. (hereafter "All Star") is an Ohio corporation engaged in the business of, among other things, appliance repair. On August 10, 1994, Plaintiff filed a voluntary Chapter 11 petition with this Court. On August 18, 1994, Plaintiff filed a Verified Complaint For Temporary and Permanent Injunction, initiating the present case. On that same day, Plaintiff filed a Motion For Emergency

Hearing, along with a Motion For Preliminary Injunction, asking this Court to direct Defendant Ameritech Publishing Inc. (hereafter "Ameritech") to publish All Star's advertisement in its commercial telephone advertising directory, commonly known as the "Yellow Pages". The basis for Plaintiff's claim is that Ameritech's refusal to publish its advertisement will cause irreparable harm to All Star, which obtains almost all of its business from yellow pages advertising, according to the affidavit of Patrick Mayberry, the President of All Star.

An Emergency Hearing was held on August 19, 1994. At that Hearing it was revealed by Ameritech that the basis for its refusal to publish All Star's advertisement is that All Star has not paid approximately One Hundred Seventy-seven Thousand Nine Hundred Thirty-three Dollars ($177,933.00) for previous Yellow Page advertisements. Of this amount, approximately Eighty-three Thousand Four Hundred Sixty-seven Dollars ($83,467.00) related to advertisements displayed in the 1992–93 Yellow Pages editions for Toledo, Akron, and Indianapolis. The amounts relating to the 1992–93 can be broken down further, into approximately Forty-nine Thousand Three Hundred Ninety-two Dollars ($49,392.00) for the Toledo advertisement, Eighteen Thousand Five Hundred Eighty-five Dollars ($18,585.00) for Akron, and Fifteen Thousand Four Hundred Ninety Dollars ($15,490.00) for Indianapolis. The 1993–94 unpaid advertisements which were run in Toledo and Indianapolis only, totaled approximately Ninety-four Thousand Four Hundred Sixty-six Dollars ($94,466.00). These figures were not disputed by All Star.

All Star's justification for not paying these claims relates back to two lawsuits presently pending in state court between itself and Ameritech. The first action appears to be for breach of contact. It appears that All Star expected Ameritech to display its ad first in the 1992–93 Toledo Yellow Pages titled listing. Instead they were placed second. This was the only advertisement alleged to be misplaced. All Star's only explanation for not paying for any of the other ads is that they expect a judgment against Ameritech from these lawsuits, and the moneys owed could simply be subtracted from the judgments.

The second action is an antitrust lawsuit against Ameritech under Section 2 of the Sherman Act for Ameritech's refusal to publish any further advertisements without payment on the previous ones. In that action, All Star alleges that the operation of the Yellow Pages was in effect a monopoly for Ameritech, and as such Ameritech must provide equal access to services for all. It is on the basis of this suit that All Star seeks a Preliminary Injunction.

### DISCUSSION

The issue presented in this case is whether this Court should grant a Preliminary Injunction as requested by All Star on the basis of All Star's pending Antitrust action. For the reasons discussed below, the Court will deny All Star's request for Preliminary Injunction.

■ As stated by the 6th Circuit Court of Appeals, there are four factors particularly important in determining whether a preliminary injunction is proper:

(1) the likelihood of success on the merits;

(2) whether injunction will save the plaintiff from irreparable injury;

(3) whether the injunction would harm others; and

(4) whether the public interest would be served by the injunction.

In re DeLorean Motor Company, 755 F.2d 1223 (1985).

■ For the reasons discussed below, this Court finds that All Star has failed to show a likelihood of success on the merits, and will thus deny its Motion. The other factors listed above need not be discussed in detail. However, it should be noted that Plaintiff has also made no showing that the injunction would harm others or society, other than the bare allegation that All Star may be forced out of business, and the result would harm competition in the appliance repair market. There has been no showing that this market would be non-competitive without the presence of All Star, or that any type of monopoly would result.

■ The law in the area of antitrust under Sherman Act has been summarized by the United States Supreme Court in *United States v. Grinnell Corp.*, 384 U.S. 563, 570, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). In that case the Supreme Court noted that illegal monopolization under Section 2 of the Sherman Act has two distinct elements: 1) possession of monopoly power in the relevant market and 2) "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." 384 U.S. at 570–71, 86 S.Ct. at 1704.

In the case at bar, All Star must make a reasonable showing that Ameritech's control of the Yellow Pages is a monopoly in the "relevant market" in order to prevail in its antitrust action. Though this Court does not hereby hold that All Star has made this showing, there are several cases wherein the Yellow Pages has been inferred to possess monopoly power in certain instances. See *Directory Sales Management v. Ohio Bell Telephone Company*, 833 F.2d 606 (6th Cir. 1987); *Ad–Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corporation*, 849 F.2d 1336 (11th Cir.1987); *Yellow Pages Consultants, Inc. v. GTE Directories Corporation*, 951 F.2d 1158 (9th Cir.1991). The Court will assume, arguendo, that monopoly power exists as a basis for the analysis of the value of All Star's claim.

The "refusal to deal" area of antitrust law under Section 2 of the Sherman Act, has been succinctly stated by the 6th Circuit in *Byers v. Bluff City News Company*, 609 F.2d 843 (1979). In *Byers*, the Court explained:

There exist two conceptually similar lines of cases which impose a duty to deal upon a monopolist. The first is a straightforward 'intent' test which originated from Dicta in *United States v. Colgate & Co.*, supra, 250 U.S. [300] at 307, 39 S.Ct. [465] at 468 [63 L.Ed. 992 (1919) ] where the Court stated that a business is free to deal with whomever it pleases so long as it has no 'purpose to create or maintain a monopoly'.

\* \* \* \* \* \*

There also exists a second, related line of cases which has been styled as promulgating the "bottleneck theory of antitrust law.' Under this approach, a business or group of businesses which controls a scarce facility has an obligation to give competitors reasonable access to it.

\* \* \* \* \* \*

In theory, the distinction between the 'intent' theory and the 'bottleneck' theory is that the former focuses on the monopolist's state of mind while the latter examines the detrimental effect on competitors. Id. at 855–856.

In the case at bar, neither the "intent" theory nor the "bottleneck theory" apply to Ameritech's refusal to deal. For the intent theory to apply, All Star would need to show Ameritech's intent was to capture or maintain a monopoly. All Star only alleges that the actions of Ameritech would harm competition in the appliance repair market because they will be forced out of business. Ameritech does not compete, nor to this Court's knowledge seek to compete, in the Appliance repair market. Thus, their goal, or "intent", is not to monopolize. Rather, they appear only to wish to refrain from doing business with a client who has not paid its bills. This constitutes a valid business justification.

All Star also claims that Ameritech's purposes for their refusal to deal are improper. All Star argues that Ameritech is simply refusing to deal with a client that has instituted a lawsuit against them, and who has not paid them on the basis of the disputed claim. While this argument could have merit to the extent of the disputed claim of the first lawsuit concerning the amount owed for an allegedly misplaced ad in Toledo in 1992–93, it does not have merit concerning the other late payments. The disputed claim amounts to only Forty-nine Thousand Three Hundred Ninety-two Dollars ($49,392.00) of the total One Hundred Seventy-seven Thousand Nine Hundred Thirty-three Dollars ($177,933.00) which is currently due. Further, Ameritech has not flatly refused to deal. They have offered to publish All Star's add if One Hundred Thousand Dollars ($100,000.00) of the total past due amount were paid, and the current advertisement were paid for in ad-

vance. All Star's only counter argument is that it intends to offset any balances due from the judgment it will receive from its two lawsuits. From these facts, this Court determines that All Star has not demonstrated that Ameritech could have an intent to monopolize.

A similar result is reached under the "bottleneck" theory, where the emphasis is upon the detrimental effect on competition. Again, there is no basis to believe that the appliance repair market will in any way suffer absent All Star. Further, because Ameritech has not been shown to engage in the appliance repair market, or stand to gain in any other way from All Star's failing, there is no basis to show any abuse of monopoly power. Thus, All Star has failed to show that it has a significant likelihood of success on the merits of its antitrust claim against Ameritech.

A similar holding was reached by the court in *Langenderfer, et al. v. S.E. Johnson Co., et al.*, 917 F.2d 1413 (6th Cir.1990). Of the many issues presented in that case, one dealt with a small paving and excavating business that claimed the defendants, who were large road construction companies, violated antitrust laws for refusing to sell them stone, sand and asphalt which they depended upon in certain locations. *Id.* at 1423. The plaintiffs claimed that the reason they were cut off was for assisting another party in another antitrust action against the defendant. Id. at 1424. This is similar to the case herein, where the Plaintiff claims that Ameritech's refusal to deal is motivated by other litigation. Also similar to the case at bar, the plaintiff in *Langenderfer* was "consistently overdue" in payments, and had shown credit difficulties. Id. at 1425. The court held, "Essentially, it seems clear that defendants and [plaintiff] were engaged in a series of commercial disputes ... The claim for refusal to deal is inextricably bound with the commercial and contract disputes between the parties, and was not proven to be a practice related to antitrust conduct." *Id.* at 1426.

For the reasons stated above, this Court likewise holds that All Star's antitrust claim is inextricably bound with commercial disputes and does not have sufficient likelihood of success to enable or persuade this Court to grant its preliminary injunction and force Ameritech to deal with a client that has consistently not paid for the services it was rendered. Such a holding would allow clients of monopolies the right to subvert their payments by simply bringing tenuous claims against the monopoly, and demanding injunctions to force the continuation of services pending lengthy litigation. Such a holding would be contrary to public policy and belie common sense.

For all the foregoing reasons the Court decides to deny the All Star's Motion for Preliminary Injunction. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

*ORDERED* that the Plaintiff's Motion for Preliminary Injunction be, and is hereby, DENIED.