# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 18, 2004      Decided March 1, 2005
Reissued March 2, 2005

No. 02-7057

COVAD COMMUNICATIONS COMPANY AND
DIECA COMMUNICATIONS, INC., *D/B/A* COVAD
COMMUNICATIONS COMPANY,
APPELLANTS

v.

BELL ATLANTIC CORPORATION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cv01046)

———

*Bruce D. Sokler* argued the cause for appellants. With him on the briefs were *Fernando R. Laguarda, John R. Gerstein*, *Merril J. Hirsh*, *Gabriela Richeimer*, and *James A. Kirkland*. *Antony R. Petrilla* and *Donald B. Verrilli, Jr.* entered appearances.

*David W. Carpenter, David L. Lawson, C. Frederick Beckner, III, Ryan D. Nelson, Jason D. Oxman, Eric J. Branfman, Rebecca P. Dick, Jonathan D. Lee*, and *Stephen T. Perkins* were on the brief of *amici curiae* AT&T Corporation, et

al. in support of appellants.

*Eliot Spitzer*, Attorney General, Attorney General's Office of the State of New York, *Michelle Aronowitz*, Deputy Solicitor General, *Jay L. Himes* and *Richard L. Schwartz*, Assistant Attorney Generals, *Richard Blumenthal*, Attorney General, Attorney General's Office of the State of Connecticut, *Steven M. Rutstein*, Assistant Attorney General, *Carla Stovall*, Attorney General, Attorney General's Office of the State of Kansas, *G. Steven Rowe*, Attorney General, Attorney General's Office of the State of Maine, *J. Joseph Curran, Jr.*, Attorney General, Attorney General's Office of the State of Maryland, *Mike Hatch*, Attorney General, Attorney General's Office of the State of Minnesota, *Frankie Sue Del Papa*, Attorney General, Attorney General's Office of the State of Nevada, and *Mark L. Shurtleff*, Attorney General, Attorney General's Office of the State of Utah, were on the brief of *amici curiae* States of New York, et al. in support of reversal of the order appealed from.

*Mark C. Hansen* argued the cause for appellees. With him on the brief were *Michael K. Kellogg*, *Aaron M. Panner*, *John Thorne*, and *Richard G. Taranto. Dan K. Webb* and *Steven F. Benz* entered appearances.

*Jerry W. Kilgore*, Attorney General, Attorney General's Office of the Commonwealth of Virginia, *William E. Thro*, State Solicitor General, and *Maureen Riley Matsen*, Deputy State Solicitor General, were on the brief for *amicus curiae* Commonwealth of Virginia, in support of appellees.

*R. Hewitt Pate*, Assistant Attorney General, U.S. Department of Justice, *Catherine G. O'Sullivan*, *Nancy C. Garrison*, and *David Seidman*, Attorneys, *John C. Rogovin*, General Counsel, Federal Communications Commission, *John E. Ingle* and *Susan L. Launer*, Deputy Associate General

Counsels, were on the brief of *amici curiae* The United States and Federal Communications Commission supporting neither party.

*Andrew D. Roth* and *Laurence Gold* were on the brief of *amicus curiae* Communications Workers of America in support of appellees.

*Lawrence E. Sarjeant, Marc Gary, Stephen M. Shapiro, John E. Muench, Jeffrey W. Sarles*, and *James D. Ellis* were on the brief of *amici curiae* BellSouth Corporation, et al. in support of appellees. *James F. Rill* entered an appearance.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: This appeal comes to us in the wake of *Verizon Communications Inc. v. Curtis V. Trinko, LLP*, 540 U.S. 398 (2004), in which the Supreme Court held that a complaint alleging an incumbent local exchange carrier (ILEC) refused to share elements of its network with a competitor, as required by the Telecommunications Act of 1996, 110 Stat. 56, codified at 47 U.S.C. § 151 *et seq.*, did not state a claim for monopolization or attempted monopolization under § 2 of the Sherman Act, 15 U.S.C. § 2. In the present case, Covad Communications Company sued Bell Atlantic Corporation, also an ILEC, similarly alleging Bell Atlantic had violated § 2 of the Sherman Act by virtue of having breached various duties imposed upon it by the 1996 Act and by engaging in other anticompetitive conduct.

The district court, prior to the Supreme Court's decision

4

in *Trinko*, granted Bell Atlantic's motion to dismiss Covad's complaint for failure to state a claim upon which relief can be granted. *Covad Communications Co. v. Bell Atlantic Corp.*, 201 F. Supp. 2d 123, 127 (D.D.C. 2002). Covad appeals, arguing: (1) the allegations in its complaint relative to the 1996 Act are materially different from the allegations held deficient in *Trinko;* and (2) at least some of its allegations are of conduct independently proscribed by the Sherman Act.[*]

We conclude that most of the allegations in Covad's complaint do not state an antitrust claim; they describe at most a violation of the 1996 Act. Of the three allegations unrelated to duties imposed upon Bell Atlantic by the 1996 Act – the false pre-announcement campaign, the refusal to deal, and the baseless and bad faith patent suit – only the alleged refusal to deal states an antitrust claim and therefore should not have been dismissed.

## I. Background

Covad provides a Digital Subscriber Line (DSL) service over local telephone lines, which not only gives its customers high-speed Internet access but also permits Covad to offer voice and data service, in competition with Bell Atlantic, which provides local exchange and telecommunications services, including DSL. Covad contends that Bell Atlantic used its monopoly power to undermine competition in various markets

---

[*] The district court declined to exercise supplemental jurisdiction over the three state common law claims and the claim that, in addition to violating the Sherman Act, Bell Atlantic violated the District of Columbia Antitrust Act. 201 F. Supp. 2d at 135. Covad does not challenge that ruling on appeal.

for telecommunications services. In April 1999 Covad sued Bell Atlantic and twelve subsidiaries asserting, in its second amended complaint, seven causes of action, including the four Sherman Act claims that are the subject of this appeal. The thrust of the four antitrust claims – monopolization, attempted monopolization, denial of essential facilities and refusal to deal, and monopoly leveraging – is that Bell Atlantic violated the Sherman Act by exercising its monopoly power in violation of its obligations under the 1996 Act.

Several allegations clearly concern Bell Atlantic's failure to make various of its facilities and elements of its network available to Covad, as required by the 1996 Act. *See* 47 U.S.C. § 251(c) (requiring ILECs to share unbundled network elements with competitors). *See generally Trinko*, 540 U.S. at 402-05 (discussing duties imposed upon ILECs by 1996 Act); *Covad Communications*, 201 F. Supp. 2d at 127 (same). Specifically, Covad alleges Bell Atlantic failed to provide it with adequate co-located space and facilities; did not make its local loops – the wires between Bell Atlantic's central offices and its customers' premises – sufficiently available to Covad; did not maintain adequate operations support systems (OSS) for Covad's use; and denied Covad access to the "transport facilities" it needed to connect its central office equipment with other points in its network.

Covad also alleges Bell Atlantic engaged in anticompetitive conduct arguably untethered to the 1996 Act. Specifically, the complaint states Bell Atlantic pursued an unlawful "price squeeze"; created the false impression Bell Atlantic's own DSL service was already available to consumers; refused to sell its DSL service to would-be customers who had orders for DSL service pending with Covad; and brought a baseless and bad faith patent suit against Covad.

6

Bell Atlantic moved to dismiss Covad's complaint on the ground it did not state a claim upon which relief can be granted. The district court granted that motion, explaining that "virtually all allegations of exclusionary conduct, with the exception of the retaliatory patent law suit, relate to Bell Atlantic's failure to comply with the myriad duties contained in ... the 1996 Act," 201 F. Supp. 2d at 129, and more important, "fall squarely outside the parameters of antitrust law," *id.* at 130. Thus, the district court held the allegations concerning Bell Atlantic's failure to share its facilities and certain network elements with Covad did not state a claim under the so-called "essential facilities" doctrine – which the Supreme Court in *Trinko* later described as having been "crafted by some lower courts" applying the Sherman Act, 540 U.S. at 410 – and held the allegations concerning the baseless and bad faith patent suit were inadequate because Covad "failed to allege [it] had any 'anticompetitive effect.'" *Id.* at 135 (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 58-59 (D.C. Cir. 2001)).

## II. Analysis

We review *de novo* the district court's dismissal of a complaint for failure to state a claim upon which relief can be granted. *See Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1085 (D.C. Cir. 1998). Confronted with a motion to dismiss, "a plaintiff is not required to plead facts sufficient to prove its allegations"; rather, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The court must accept all facts and reasonable inferences as true and may dismiss the complaint only if it "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Caribbean Broad. Sys.*, 148 F.3d at 1086. Why? Because the "the issue presented by a

motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*

In this case, therefore, the issue on appeal is broadly whether Covad's complaint alleges Bell Atlantic engaged in any "anticompetitive conduct" in violation of § 2 of the Sherman Act. *See Trinko*, 540 U.S. at 407 ("possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*"). Covad argues that all the claims in its complaint should be reinstated because its allegations of anticompetitive conduct, taken together, dwarf the single allegation at issue in *Trinko* and that, in any event, at least some of its allegations, viewed individually, do state a claim upon which relief can be granted under the Sherman Act. Bell Atlantic contends the district court properly dismissed the complaint in its entirety because each allegedly anticompetitive act either pertains only to a duty imposed by the 1996 Act or otherwise fails to state a claim under the Sherman Act.

In determining whether Covad has stated a valid claim, our starting point is the teaching of the Supreme Court in *Trinko* about the relationship between the 1996 Act and established antitrust principles. In holding a complaint alleging breach of an ILEC's duty under the 1996 Act to share its network with competitors did not state a claim under § 2 of the Sherman Act, the Court explained that, "just as the 1996 Act preserves claims that satisfy existing antitrust standards, it does not create new claims that go beyond existing antitrust standards." *Id.* at 407. Having determined that a violation of the 1996 Act is not itself actionable under the Sherman Act, the Court went on to determine "whether the activity of which [the plaintiff] complains violate[d] pre-existing antitrust standards." *Id*. We address the same question but only after first disposing of

Covad's preliminary arguments for distinguishing *Trinko*.

A. Has Covad Distinguished *Trinko*?

At the outset Covad contends its complaint is materially different from the complaint in *Trinko*, and should be reinstated in its entirety, because the complaint in *Trinko* stated only "the narrowest of claims," whereas its complaint alleged the defendant ILEC: (1) engaged in "a vast array of anticompetitive conduct"; and (2) sought to "export" its monopoly power to a downstream market. Covad also maintains (3) the district court erroneously held the 1996 Act implicitly granted antitrust immunity for a carrier regulated by the 1996 Act – an interpretation specifically rejected by the Supreme Court in *Trinko*, 540 U.S. at 406.

Covad's first distinction is legally irrelevant. A violation of § 2 of the Sherman Act "requires, in addition to the possession of monopoly power in the relevant market, the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Id.* at 407. Accordingly, a "would-be monopolist ... comes within the condemnation of the Sherman Act [only] when it engages in 'anticompetitive conduct.'" *Caribbean Broad. Sys.*, 148 F.3d at 1087; *see Trinko*, 540 U.S. at 407. Therefore, as Bell Atlantic argues, whether a particular allegation states a claim under the Sherman Act depends entirely upon the competitive significance of the conduct alleged, and not at all upon the number or detail of the allegations recited in the complaint.

Covad's second distinction of *Trinko*, that Bell Atlantic attempted to leverage monopoly power from one market into another, is equally unavailing. As Bell Atlantic is quick to point

out, the Court in *Trinko* rejected a similar argument, *see* 540 U.S. at 415 n.4 (holding theory of second-market "leveraging presupposes anticompetitive conduct, which in this case could only be the refusal-to-deal claim we have rejected"). If Covad does not allege any anticompetitive conduct in Bell Atlantic's "acquisition or maintenance" of monopoly power, then it is of no moment whether Bell Atlantic allegedly exercised monopoly power in two markets rather than in one.

Covad's final point, namely, that the district court erroneously granted Bell Atlantic implied antitrust immunity insofar as it is regulated by the 1996 Act, simply misstates the holding of the district court. Although that court "[could] not help but note" in a dictum the "fundamental incompatibility" between the remedial scheme of the 1996 Act and the remedies available under the Sherman Act – as would the Supreme Court in *Trinko*, *see* 540 U.S. at 406 ("1996 Act is a good candidate for implication of antitrust immunity, to avoid the real possibility of judgments conflicting with the agency's regulatory scheme") – that was not in the district court's view "dispositive" of Covad's antitrust claims. 201 F. Supp. 2d at 133. Indeed, as Bell Atlantic notes, the district court did not need to consider whether the 1996 Act granted Bell Atlantic, as an ILEC, implicit antitrust immunity because it had already held Covad's allegations that Bell Atlantic had violated the 1996 Act did not give rise to an antitrust claim. *See id.* at 130-33.

Because Covad fails either to distinguish *Trinko* or to show the district court's analysis is inconsistent with that decision, we review Covad's complaint in light of the Supreme Court's holding that the 1996 Act did not alter preexisting antitrust standards. 540 U.S. at 406-07. That Bell Atlantic's alleged conduct may violate the 1996 Act does not, of course, mean that same conduct cannot violate the Sherman Act. The

question to which we now turn, therefore, is whether any of the conduct alleged in Covad's complaint, regardless whether it violated the 1996 Act, violated § 2 of the Sherman Act.

## B. Has Covad Stated a Claim under the Sherman Act?

Covad alleges Bell Atlantic engaged in five types of conduct in violation of the Sherman Act. They are that Bell Atlantic: (1) unlawfully refused to cooperate with Covad (¶¶ 91-177, 196-201); (2) engaged in an unlawful price squeeze (¶¶ 178-85); (3) falsely advertised that its own DSL service was available at times and in places where Covad's service was available (¶¶ 186-92); (4) refused to sell its DSL service, in places where it was actually available, to would-be customers who had orders pending for Covad's DSL service (¶¶ 193-95); and (5) brought a baseless and bad faith patent suit against Covad (¶¶ 202-12).

## 1. Refusal to cooperate

Although the Court in *Trinko* recognized that "[u]nder certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct," 540 U.S. at 408, it concluded that "insufficient assistance in the provision of service to rivals is not a recognized antitrust claim under [its] existing refusal-to-deal precedents," *id.* at 410. An antitrust claim based upon the defendant's refusal to cooperate with its competitor can withstand a motion to dismiss only when it is alleged either that the defendant had previously "engaged in a course of dealing with its rivals, or [that it] would ever have done so absent statutory compulsion," *id.* at 409. Here, Covad alleges neither that Bell Atlantic had at one time voluntarily dealt with Covad nor that it would ever have been in Bell Atlantic's interest to have done so. Therefore, as in *Trinko*, the

defendant's "reluctance to interconnect ... tells us nothing about dreams of monopoly." *Id.*

In the light shed by *Trinko*, we agree with the district court that the following allegations do not state a claim upon which relief can be granted under § 2 of the Sherman Act: "The Battle to Collocate" (¶¶ 91-124), in which Covad alleges Bell Atlantic did not offer it the opportunity to co-locate its equipment on Bell Atlantic's premises upon "just, reasonable, and nondiscriminatory terms" (as required by § 101 of the 1996 Act, 47 U.S.C. § 251(c)(6)); "The Odyssey of Obtaining Loops and Dealing with OSS" (¶¶ 125-174), in which Covad alleges Bell Atlantic violated its obligation under the same provision to share loops and OSS; "The Effort to Obtain Transport" (¶¶ 175-77), which similarly pertains to Bell Atlantic's duties under the 1996 Act; and "Bell Atlantic's Sham, 'Feel Good' Negotiation Strategy" (¶¶ 196-201), in which Covad alleges Bell Atlantic failed to bargain in good faith over terms of interconnection (as required by § 101 of the 1996 Act, 47 U.S.C. § 251(c)(1)).

2. Price squeeze

Covad next alleges Bell Atlantic attempted to monopolize the market for DSL in violation § 2 of the Sherman Act by pricing its services as follows:

> Bell Atlantic ... offered and re-sold its DSL services to [Internet Service Providers] at a monthly price ... very close to, and in some cases less than, the monthly cost Bell Atlantic charge[d] Covad and other wholesale customers for unbundled loops. ... [Bell Atlantic] achieve[d] this discriminatory pricing by allocating a negligible or zero cost to the loops over which it provides its DSL services and recovering virtually all ...

of the cost of the loops from its local analog voice services.

Covad claims this conduct constitutes a "price squeeze" that violates the Sherman Act, for which proposition it relies upon *United States v. Aluminum Co. of America*, 148 F.2d 416 (2d Cir. 1945).

Covad's allegation is in essence that Bell Atlantic charged Covad a prohibitively high and discriminatory price for access to its loops. Bell Atlantic's duty to make those loops available at all, however, is purely a creature of the 1996 Act. *See* 47 U.S.C. 251(c)(3). The Sherman Act does not impose such a duty – recall *Trinko*, 540 U.S. at 410 ("insufficient assistance in the provision of service to rivals is not a recognized antitrust claim") – at least when there is no allegation it would have been profitable for the defendant to have made its facilities available to a competitor absent statutory compulsion. And, as observed in a leading treatise, "it makes no sense to prohibit a predatory price squeeze in circumstances where the integrated monopolist is free to refuse to deal," 3A AREEDA & HOVENKAMP, ANTITRUST LAW ¶ 767c3, at 129-30 (2d ed. 2002). We therefore affirm the district court's dismissal of Covad's § 2 claim based upon a price squeeze.

3. False pre-announcement campaign

Covad also maintains its complaint states an antitrust claim based upon Bell Atlantic's pre-announcement of its DSL service: "Knowing the limited reach and scope of its planned service Bell Atlantic nonetheless advertised its DSL services aggressively." The effect of that advertising was allegedly "to leave the impression that Bell Atlantic was ready, willing and capable of providing DSL services." In response, Bell Atlantic

13

contends, among other things, Covad's complaint does not state an antitrust claim because it does not allege a plausible harm to competition. We agree and hence do not reach Bell Atlantic's other arguments.[*]

The gist of Covad's allegation is that Bell Atlantic aggressively advertised its DSL service in certain areas when that service was not yet available there. According to the complaint, that advertising "could stifle competition either by capturing customers through a bait and switch, or (in any event) by delaying customers who otherwise would have gone to Covad for services Bell Atlantic was advertising and by increasing the costs Covad would have to bear in order to advertise."

Concerning the "bait and switch," Covad alleges that when a would-be customer called Bell Atlantic to order DSL service at a location where it was not yet available from Bell Atlantic, the defendant attempted to sell that customer its "slower and more expensive 'ISDN Anywhere' service." As for "delaying customers who otherwise would have gone to Covad for services Bell Atlantic was advertising," although Covad does not elaborate, we believe its point is that some potential customers, after attempting to order DSL service from Bell Atlantic only to discover it was unavailable, decided to wait for Bell Atlantic's service to become available rather than immediately patronizing Covad.

None of these allegations suggests a plausible harm to

---

[*] Specifically, we do not address Bell Atlantic's arguments that the court should presume any harm to competition from false advertising is *de minimis* and that a plaintiff must plead actual falsity in order to state an antitrust claim.

competition, let alone a case of attempted monopolization. On the contrary, the practices alleged could only have enhanced competition by subjecting Covad's DSL service to market rivalry both from Bell Atlantic's present ISDN and from its future DSL service. That Covad might have lost customers in this way does not state an antitrust claim, for "[i]t is axiomatic that the antitrust laws were passed for the protection of *competition*, not *competitors*." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993). Similarly, to the extent Bell Atlantic's advertising obligated Covad to increase its own advertising, competition was only enhanced. *See* ROBERT H. BORK, THE ANTITRUST PARADOX 314 (2d ed. 1993) ("advertising and promotion [are] essential to vigorous market rivalry").

The cases upon which Covad relies do not suggest otherwise. They each involved either a defendant that was alleged to have untruthfully but effectively disparaged its competitor's product, *see, e.g.*, *Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Lab.*, 850 F.2d 904, 916-17 (2d Cir. 1988) (generic drug manufacturer alleging brand name manufacturer spread materially false information about safety of its product states claim under § 2 of Sherman Act where falsehood was "likely to induce reasonable reliance" and was "not readily susceptible of neutralization or other offset"), or in one instance a monopolist that by making false representations had frustrated potential rivals' efforts to develop a competitive product, *see Microsoft Corp.*, 253 F.3d at 76-77. In no case could the consumer readily discover the defendant's falsity. Here, the alleged falsehood pertains only to whether Bell Atlantic's DSL service was then available. When a company falsely claims or implies its own service is available and the falsity of that claim is necessarily dispelled whenever a consumer tries to obtain the service, there can be no plausible harm to competition; upon discovering the

service is not available, the consumer may choose freely whether to purchase the service from another source or to wait for the offeror to make good on its offer. Although the consumer will have incurred an unnecessary transaction cost – which may generate bad will toward the firm by which it was misled – that is not a harm to the competitive process.

*MCI Communications Corp. v. AT&T Co.*, 462 F. Supp. 1072 (N.D. Ill. 1978), cited by Covad, is not necessarily to the contrary. There, AT&T's pre-announcement campaign was allegedly "accompanied by extensive publicity to the business and financial community" and was intended not only "to discourage MCI's potential customers" but also "to deprecate MCI's credit in the financial community." *Id.* at 1096-97. In this case, Covad does not allege that Bell Atlantic's preannouncement was aimed at anyone but potential customers and, as we have seen, upon inquiring they had to be undeceived.[*]

4. Refusal to deal

Covad next argues that Bell Atlantic unlawfully refused to sell its DSL service to would-be customers who had orders for DSL service pending with Covad. According to Covad, Bell

---

[*] Covad also relies upon *United States v. Microsoft Corp.*, 159 F.R.D. 318 (D.D.C. 1995), for the proposition that a preannouncement campaign directed at consumers may violate the Sherman Act. Although the district court, in rejecting a proposed consent decree did suggest that a preannouncement campaign might unlawfully "contribute to the acquisition, maintenance, or exercise of market share," *id.* at 336, because the Government had made no allegation concerning a preannouncement campaign, *id.* at 335, this court expressly disapproved the district court's consideration of that subject. 56 F.3d 1448, 1459 (1995).

Atlantic's refusal to deal was designed "to prevent Covad from getting to the market ahead of Bell Atlantic." Bell Atlantic counters that Covad failed to plead that this practice resulted in a short-term economic loss to Bell Atlantic, as is required. *See* AREEDA & HOVENKAMP, ANTITRUST LAW ¶ 773, at 199 (Supp. 2004) (to be unlawful, refusal to deal must be "'irrational' in the sense that the defendant sacrificed the opportunity to make a profitable sale only because of the adverse impact the refusal would have on a rival"). In any event, Bell Atlantic asserts, it had a legitimate economic justification for refusing to deal, namely, that it was unprofitable to sell its DSL service to a consumer who would soon switch his custom to Covad. Neither of Bell Atlantic's arguments is persuasive as a justification for dismissing Covad's complaint.

As to Bell Atlantic's first point, the defendant is correct that in order to prevail upon this claim Covad will have to prove Bell Atlantic's refusal to deal caused Bell Atlantic short-term economic loss. *See generally United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919) (absent "purpose to create or maintain monopoly, [the Sherman Act] does not restrict the long recognized right of trader ... freely to exercise his own independent discretion as to parties with whom he will deal"). But Covad has alleged that Bell Atlantic's refusal to deal was "predatory," which suffices to withstand a motion to dismiss because, in the vernacular of antitrust law, a "predatory" practice is one in which a firm sacrifices short-term profits in order to drive out of the market or otherwise discipline a competitor. *See Brooke Group Ltd.*, 509 U.S. at 222-23 (claim of predatory pricing demands proof of below-cost pricing).

Bell Atlantic's second defense – that its refusal to deal was economically justified – depends upon a question of fact and therefore is not cognizable in support of a motion to dismiss.

It is, of course, entirely possible Bell Atlantic will be able to prove the cost of connecting a customer to its DSL service is not recovered in the short-term, thereby showing its refusal to deal was a reasonable business decision. On the other hand, it is also possible Bell Atlantic's refusal to deal reflected its willingness to sacrifice immediate profits from the sale of its DSL service in the hope of driving Covad out of the market and recovering monopoly profits in the long-run. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986) (because predatory pricing requires practitioner to "forgo profits that free competition would offer," it "must have a reasonable expectation of recovering, in the form of later monopoly profits, more than the losses suffered"). The district court cannot choose between these competing explanations without first resolving questions of fact not before it upon a motion to dismiss.

5. Baseless and bad faith patent suit

Finally, Covad argues its allegation that Bell Atlantic brought a spurious patent case against it states a claim under § 2 of the Sherman Act. *See generally Bell Atlantic Network Services, Inc. v. Covad Communications Group*, 92 F. Supp. 2d 483 (E.D. Va. 2000). Specifically, Covad contends that Bell Atlantic's suit was baseless, brought in bad faith, and had an anticompetitive effect. Bell Atlantic counters first, as the district court held, that Covad failed to allege the suit had an anticompetitive effect, *see Covad Communications*, 201 F. Supp. 2d at 135 (quoting *Microsoft*, 253 F.3d at 58-59), and second, that the suit was not objectively baseless.

Regarding anticompetitive effect, Bell Atlantic is mistaken. Covad alleges Bell Atlantic brought the patent suit in order "to interfere with competition in the relevant markets."

That is sufficient to allege an anticompetitive effect.

Alternatively, Bell Atlantic urges us to hold, as a matter of law, that its bringing the patent suit could not have harmed competition. In so doing, Bell Atlantic confuses the function of a motion to dismiss pursuant to Rule 12(b)(6), which tests the sufficiency of the plaintiff's allegations, with a motion for summary judgment pursuant to Rule 56, which tests the sufficiency of the non-moving party's evidence in light of the legal theory it has advanced. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ("simplified notice pleading standard [of the Federal Rules of Civil Procedure] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"). Bell Atlantic's protestation notwithstanding, we have it on good authority that even a single patent suit brought in bad faith against a nascent rival might unlawfully harm competition. *See* 3A AREEDA & HOVENKAMP, ANTITRUST LAW ¶ 782k, at 281 ("an unjustified patent infringement suit ... might be abused by a monopolist to the detriment of actual or potential rivals"). Whether Bell Atlantic's suit had such an effect is, again, a question not properly decided upon a motion to dismiss.

Bell Atlantic next disputes Covad's characterization of the patent suit as baseless. Resolving this matter requires us to consider the *Noerr-Pennington* doctrine, under which petitioning the Government for redress of grievances, whether by efforts to influence legislative or executive action or by seeking redress in court, is immune from liability under the antitrust laws. *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (*Noerr-Pennington* doctrine encompasses "the approach of citizens ... to courts").

*Noerr-Pennington* immunity, however, does not extend to "sham" litigation. The presumption of antitrust immunity for litigating is dispelled if the plaintiff can show that two conditions are met:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. ... Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. ... This two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability.

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.* 508 U.S. 49, 60-61 (1993). Bell Atlantic urges us to decide as a matter of law that its patent suit against Covad was not "objectively baseless." Covad interposes no issue of fact and joins issue on the question of law. With the opinions of the patent courts before us, we see no barrier to our determining now whether Bell Atlantic's suit was a sham and hence without *Noerr-Pennington* immunity from antitrust liability.

Bell Atlantic sued Covad for patent infringement. The district court, in a lengthy and detailed opinion, granted summary judgment in favor of Covad. *Bell Atlantic Network Services*, 92 F. Supp. 2d at 499-500. Bell Atlantic appealed, and the Court of Appeals for the Federal Circuit, in another lengthy and detailed opinion, *see* 262 F.3d 1258 (2001), affirmed the judgment of the district court. That Covad ultimately prevailed, of course, tells us little about whether Bell Atlantic's patent suit lacked objective merit. *See Prof'l Real Estate Investors*, 508 U.S. at 60 n.5 ("court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately

unsuccessful action must have been unreasonable or without foundation").

Our review of the patent courts' opinions convinces us that Bell Atlantic's case against Covad was not objectively baseless. Bell Atlantic advanced reasonable arguments that each court went to some lengths to reject. Nothing in their opinions suggests that "no reasonable litigant could [have] realistically expect[ed] success on the merits." *Id.* at 60.

Covad also alleges Bell Atlantic "singled Covad out" for suit and "used the patent action as the vehicle for serving discovery requests on Covad" seeking "confidential information about a competitor." Those allegations, however, speak to Bell Atlantic's subjective motivation for suing Covad, which may be evaluated "[o]nly if [the] challenged litigation is objectively meritless." *Id.* We therefore conclude that Covad's allegation that Bell Atlantic brought a baseless and bad faith patent suit against it fails to state a claim under § 2 of the Sherman Act.

## III. Conclusion

For the foregoing reasons, the judgment of the district court dismissing Covad's claims of monopolization and attempted monopolization is reversed with respect to Covad's claim that Bell Atlantic unlawfully refused to deal with would-be customers who had orders for DSL service pending with Covad. The judgment is affirmed in all other respects and this matter is remanded to the district court for further proceedings consistent herewith.

*So ordered*.