In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 22-1858

AMORY INVESTMENTS LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

UTRECHT-AMERICA HOLDINGS, INC., *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 8637 — **Thomas M. Durkin**, *Judge.*

---

ARGUED JANUARY 6, 2023 — DECIDED JULY 21, 2023

---

Before EASTERBROOK, ST. EVE, and KIRSCH, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Plaintiffs contend in multiple consolidated suits that many firms in the broiler-chicken business formed a cartel. The district court concluded that these claims require a trial. *In re Broiler Chicken Antitrust Litigation*, 290 F. Supp. 3d 772 (N.D. Ill. 2017); 2023 U.S. Dist. LEXIS 113271 (N.D. Ill. June 30, 2023). Third-party discovery in that ongoing suit turned up evidence that Rabobank, a lender to

several broiler-chicken producers, urged at least two of them to cut production. This led some plaintiffs to add Rabobank as an additional defendant. (Like the district court, we use "Rabobank" as an umbrella term for Utrecht-America Holdings, Inc., and its subsidiaries Coöperatieve Rabobank, U.A.; Rabo AgriFinance LLC; Rabobank USA Financial Corp.; and Utrecht-America Finance Co.) But the district court deemed the complaint against Rabobank too thin to state a claim, and it dismissed an amended complaint as well. 2022 U.S. Dist. LEXIS 78421 (N.D. Ill. Feb. 11, 2022). The court entered a partial final judgment under Fed. R. Civ. P. 54(b), see 2022 U.S. Dist. LEXIS 78638 (N.D. Ill. Apr. 29, 2022), from which eight of the plaintiffs have appealed.

Plaintiffs' claims rest on §1 of the Sherman Act, 15 U.S.C. §1, which bans combinations and conspiracies in restraint of trade. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court recounted and reaffirmed a line of cases holding that §1 forbids only agreements and does not reach unilateral action. To state a §1 claim, *Twombly* held, the complaint must plausibly allege that the defendants have agreed with each other, not simply that they have reduced output in parallel or otherwise evinced an understanding that lower output implies higher prices and (potentially) higher profits.

The district judge thought that the complaint against Rabobank foundered for the same reason as the complaint in *Twombly*: all the plaintiffs allege is that Rabobank set out to protect its interests through unilateral action. The complaint does not allege that Rabobank served as a conduit for the producers' agreement, that it helped them coordinate their production and catch cheaters (the bane of any cartel), or even that Rabobank knew that the producers were coordinating

among themselves. (The trial of the main claim lies ahead, and perhaps a jury will determine that the producers did not form a cartel. For current purposes, though, we must assume that they did—though we need not assume that Rabobank knew it, for the complaint does not allege that knowledge.)

Although the district court dismissed the complaint against Rabobank on the pleadings, it effectively granted summary judgment. The two procedures merged because, before filing their complaint against Rabobank, plaintiffs had the benefit of discovery against Rabobank in the main suit against the producers. So if there is a plausible claim to be made, the district judge thought, plaintiffs should not have had any trouble making it. Yet the complaint does not allege that Rabobank facilitated an agreement among producers or helped with its enforcement.

Instead the complaint alleges two varieties of evidence. One is a flurry of emails among managers and other employees at Rabobank observing that lower output and higher prices in the broiler-chicken market would improve the bank's chance of collecting its loans. The other is a pair of emails from Adriaan Weststrate, the head of Rabobank's poultry-lending section, to executives at producers Perdue and Pilgrim's Pride. Weststrate told Perdue: "You can count on us to help you in any way possible to get through this down cycle, including preaching the gospel to other poultry companies." The next day Weststrate used the same word in an email to an executive at Pilgrim's Pride, telling him that chicken price increases and corn price decreases were "unfortunately unlikely so we are left with the old 'production cuts' gospel!!"

Like the district judge, we see in these emails nothing but unilateral action by Rabobank. The intra-Rabobank emails

could not have promoted or facilitated cooperation among producers. And Weststrate's two messages did nothing beyond remind the producers of something they doubtless learned in Economics 101: as long as demand curves slope downward, lower output implies higher prices. Delivering a lesson in microeconomics does not violate the Sherman Act. A violation depends on *agreement*, as *Twombly* stressed, and unilateral action or advice differs from agreement. See also, e.g., *United States v. Colgate & Co.*, 250 U.S. 300 (1919).

That's really all there is to the claim against Rabobank. We do not doubt that banks and other intermediaries can be liable under §1 if they facilitate the making or enforcement of an agreement among producers. But the only evidence to which this complaint adverts does not plausibly imply that Rabobank did any such thing, so the judgment in its favor is

AFFIRMED.